CITY OF HOUSTON V. MISSES BLANCHE AND WILLIS CULMORE

No. A-5048. Decided April 20, 1955.
Rehearing overruled June 1, 1955.
(278 S.W. 2d Series 825)

*Will Sears,* City Attorney, and *Ernest A. Knipp,* of Houston, for petitioner.

On the proposition that the trial court erred in refusing to submit certain special issues cited Davidson v. Texas & N.

O. Ry. Co., 67 S.W. 1093; Coughran v. Nunez, 133 Texas 303, 127 S.W. 2d 885; Nye v. Hawkins, 65 Texas 600.

*Hamblen & Bobbitt* and *W. J. Mills,* all of Houston, for the respondents.

In reply to petitioner's points cited, City of San Antonio v. Grandjean, 91 Texas 430, 41 S.W. 477; Haverbekken v. Hale, 109 Texas 106, 204 S.W. 1162; Missouri, K. & T. Ry. Co. of Texas v. Jones, Com. App., 24 S.W. 2d 366.

Mr. Chief JUSTICE HICKMAN delivered the opinion of the Court.

This suit, originally styled City of Houston v. Paul E. Armstrong et al., was brought against more than one hundred and seventy persons, firms, and corporations to condemn property out of the J. S. Collins Survey in Harris County forming a link in State Highway No. 59. It was alleged that there existed such irreconcilable conflicts in the titles, boundaries, and locations of the various tracts involved that the City could not agree on the amount of damages with any of the defendants without running the risk of having to pay twice or more for the same right of way. Upon a trial before a jury the total damages were assessed at $217,932.37, which amount the City deposited in the registry of the court to await the determination of the titles of the parties in the district court, following which the fund will be distributed by the county court to the parties entitled thereto. Only two of the defendants, Misses Blanche and Willis Culmore, appealed. Upon the ground that the trial court erred in refusing to submit to the jury certain special issues requested by the appellants (respondents) the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause. 272 S.W. 2d 556. In the Court of Civil Appeals the case was styled Paul E. Armstrong et al. v. City of Houston et al., although Armstrong was not an appellant.

The Kansas University Endowment Association and Mrs. Irma Lee Brokaw, defendants in the trial court, did not complain of the judgment of that court, but when that judgment was reversed by the Court of Civil Appeals they filed separate applications in this court for writs of error making common cause with, and adopting the application of, the City of Houston.

■ The controlling question for decision is whether or not ir-

reconcilable conflicts exist in the titles, boundaries, and locations of the various tracts of land involved. If such conflicts exist, the procedure followed by the trial court was correct. That procedure, as indicated above, was to permit the City to proceed in one suit against all parties whose interests it was necessary to preclude by the judgment, and to award damages for the land taken in a lump sum to be apportioned by that court after the conflicting claimants had litigated their titles and boundaries in the district court. By paying the amount of the award into the registry of the court the City was authorized to take possession of the condemned right of way. That procedure had thereto fore been approved by this court. Houston North Shore Railway Co. v. Tyrrell, 128 Texas 248, 98 S.W. 2d 786, 108 A.L.R. 1508. It was outlined and approved by courts of civil appeals in Davidson v. Texas and N. O. Ry. Co., 29 Texas Civ. App., 54, 67 S.W. 1093, and Rabb v. LaFeria Mutual Canal Co., 62 Texas Civ. App., 24, 130 S.W. 916, error refused, and in our opinion in the first-named case we cited those cases with approval along with other cases and 16 Texas Jur., Sec. 116, p. 730. The opinions in those cases contain such clear discussion of the procedure and the reasons necessitating its adoption that further writing on the question by us would hardly be justified.

■ Respondents filed a motion in the trial court to sever the proceedings against them from the proceedings against the other defendants. The motion was overruled. They then requested the submission to the jury of six special issues. The request was denied. By the first three requested special issues the respondents sought to have the jury determine from a preponderance of the evidence whether the City could substantially locate on the ground the land claimed by them; whether there was a conflict between the land claimed by them, "and any other defendant herein"; and, if so, the names of such persons. Those issues were requested upon the theory then adopted by respondents that issues of fact regarding the title and boundaries of their lands were raised by the evidence. If their theory was correct, the county court was without jurisdiction to enter any judgment based upon answers to said issues, and it was not error to refuse to submit them.

■ Special Issues 4, 5, and 6 requested by respondents called for a determination of the market value of their land which was condemned and the amount of their consequential damages. The court refused to submit those issues. If there was a fact issue as to the location and boundaries of respondents' land, the court did not err in refusing to submit those issues. In the

Court of Civil Appeals the respondents did not complain of the ruling of the trial court refusing to submit their requested issues 1, 2, and 3, but complained of the overruling of their request to submit Special Issues 4, 5, and 6. Their theory in that court was not that the county court had jurisdiction to decide questions presented in issues 1, 2, and 3, but that the matters inquired about in those requested issues were not in dispute at all and that as a matter of law the right of way passed through their land at established points. The Court of Civil Appeals held that the trial court did not err in overruling the motion to sever, but did err in refusing to submit the requested special issues, which to our minds would effect a severance. If there was an issue of fact raised by the evidence as to the true location on the ground of the land claimed by respondents, they were not entitled to a severance. In our view there was abundant evidence raising that issue.

The controlling facts may be summarized as follows: All of the right of way sought to be condemned is in the J. S. Collins Survey, and all of the defendants claim land in what is called the "Collins Tract Addition," a part of that Survey. The Survey was patented to Collins' assignee, Stewart, on March 1, 1841. It is in the shape of an inverted capital "L." On January 22, 1842, Stewart executed a deed conveying two tracts of land to Darius Gregg. The first of these tracts was described as being 259 acres out of the northeast corner of the J. S. Collins Survey. That is the tract which subsequently became the "Collins Tract Addition." The original plat of that addition was recorded in the Harris County deed records on June 14, 1862. A copy thereof is printed in connection with the opinion of the Court of Civil Appeals in 272 S.W. 2d, pages 558-559. It covers two full pages and could not well be reduced in size. It will not be reproduced here because the convenience of those who may read this opinion will be best served by referring to it in that separate available volume.

The plat shows thirteen streets running north and south and a like number running east and west. On the plat the land is divided into 116 blocks, each of which is subdivided into numbered lots. The street along the northern boundary is designated "Adams"; that on the eastern boundary, "York"; that on the extreme southern boundary, "Labadie"; and that on the western boundary, "McLane." The plat does not show the location of any corner and neither does it show any tie-in with any fixed point or object on the ground. The Collins Tract Addition as it now exists is bounded on the north by Kelley Street, on the

east by Hirsch Street, and on the extreme south by Labadie Street. There is no street on the west boundary. Neither Kelley Street nor Hirsch Street is shown on the plat. York Street on the plat coincides for the most part with Hirsch Street on the ground. None of the inside streets shown in the plat, with the exception of a portion of Neches Street, was ever located on the ground. There is no Adams Street or York Street. All conveyances of land in the Collins Tract Addition after it was platted, including conveyances through which respondents acquired title to Blocks 26 and 46, were made with reference to the numbered blocks and lots as shown on the plat. According to field notes of the plat there were approximately 259 acres of land included therein, but the actual acreage on the ground is approximately 217 acres.

The mere recital of the above facts is sufficient to make a *prima facie* showing of irreconcilable conflicts in the location and boundaries of the various blocks. The shortage of more than forty acres of land must be adjusted in some manner, and with no fixed corners or calls for joining with any established point on the ground, the location of any block described only by reference to the plat appears uncertain.

A consideration of the theories of the respective parties will reveal with certainty that real conflicts of claims exist which must be resolved by the district court. The theory of the respondents is that they definitely located their lands, Block 26 and 46, on the ground with reference to Block 27, formerly used by the City of Houston as a pest house. Their surveyors used as a starting point a six-inch concrete monument. They assumed that it marked the northeast corner of the so-called "Pest House Block"; that such block was correctly located; and that the six-inch concrete monument was actually a corner thereof. Those were mere assumptions. The witness who made the actual survey testified that he did not survey the boundaries of the Collins Tract Addition, and that he did not know whether the location which he made of Blocks 26 and 46 corresponded with the recorded plat of the subdivision; that he tied the southwest corner of Block 26 to the center line of Labadie Street on the south without measuring the distance northward to the north boundary or westward to the west boundary of the Addition. Labadie Street as located on the ground is more than four hundred feet north of where it would be if its location is determined by the distances given on the recorded plat with reference to which respondents acquired title.

The theory of petitioner, Mrs. Brokaw, is that the northeast corner of the Collins Track Addition may be locattd with substantial accuracy at the intersection of Kelley and Hirsch Streets. She claims Blocks 61, 28, and other according to the plat as recorded. By following the description by metes and bounds contained in her deed, Block 28, owned by her, would be located in the right of way and would overlap portions of the location claimed by respondents. Her theory would place the blocks claimed by respondents entirely out of the right of way and portions of her land in the right of way. In summary: Mrs. Brokaw locates her land with reference to Kelley Street, the northern boundary of the tract, which she assumes is located on the ground substantially as Adams Street was located on the recorded plat. The Culmores locate their land with reference to Labadie Street, the southern boundary, which they assume was correctly located on the ground. There is a shortage on the ground of 159.5 varas between the north and south boundaries of the Addition as shown by the plat. It is apparent, therefore, that a conflict exists as to the true location on the ground of the blocks claimed by the respective parties.

Kansas University Endowment Association claims to own several of the northernmost tier of blocks according to the original recorded plat. If the contention of respondents is correct those blocks do not exist. The field notes would place them in another survey. Our conclusion is that the trial court did not err in refusing to submit the special issues requested by respondents.

It appears that an affirmance of the judgment of the Court of Civil Appeals would bring about an unjust result. That court reversed the trial court's judgment only "insofar as same has been appealed by these two appellants" (the Culmores, respondents). In conformity with that judgment the county court would fix the damages of respondents on the assumption that the right of way passes through their land at the points claimed by them. Should the judgment of the district court place respondents' land at the same location, the City might well be compelled to pay twice for the same strip of land; this for the reason that it would be required to pay the lump sum fixed by the original judgment and also the damages fixed by the county court on remand. On the other hand, if the judgment of the district court should locate respondents' land outside the right of way in accordance with the theory of Mrs. Brokaw and should also deny respondents' claim of title by limitation, respondents would

have judgment against the City for damages which they did not suffer.

■ By their Point 9 in the Court of Civil Appeals respondents contended that it was error for the trial court to enter its judgment for a lump sum "because there is no lawful manner in which such a judgment can be apportioned between the different land owners." We do not agree with this contention. We have found no statute or court decision delineating the procedure to be followed in this complicated fact situation. The procedure necessarily will be complicated also. The condemnation proceeding involved five separate tracts of land taken for right of way or drainage purposes. The jury found tract No. 1, containing 30.698 acres, to have a value of $150,383.33, tract No. 2, containing 2.324 acres, to have a value of $32,294.67, tract No. 3, containing 2.294 acres, to have a value of $13,500.00, tract No. 4, containing 1.762 acres, to have a value of $8,242.67, and tract No. 5, containing 2.192 acres, to have a value of $13,511.70. When the titles of the various owners of land within these five tracts have been fixed by the judgment of the district court and an order has been entered in that court directing a distribution of the money on deposit in the county court to such owners, the parties may then proceed to trial in the county court to determine the percentage of the interest of each such owner in the fund on deposit. The parties will be entitled to a jury if one is demanded. The issues will perhaps be less complicated if separate trials are had with respect to each of the five separate tracts of land taken.

■ There remains for decision a most interesting question. The damages assessed by the jury were for the value of the land taken. Without knowing who owned the various tracts or what portions, if any, of the land owned by any defendant was included in the right of way consequential damages to any defendant was not and could not have been determined. Respondents have insisted, and still insist, on their right to recover consequential damages in the event it is determined that the right of way takes a portion, but not all, of their land. If by the judgment of the district court a portion, but not all, of their land was taken and they suffered consequential damages thereby, their right to recover such damages cannot be denied them. Since it was impossible to ascertain the amount, if any, of such damages upon the trial of this case, we hold that after titles and boundaries have been established by the district court, if an issue remains as to the right of respondents to consequential damages, that issue may yet be decided by the county

court. The law must be construed as having sufficient flexibility to permit that practice. While it is not desirable to try cases piecemeal, it is not possible to preserve the certain right of the City to condemn and also the equally certain right of respondents to consequential damages in any other way than by such trial. The procedure approved above by which damages for taking are awarded in lump sum to be distributed after judgment is rendered by the district court in effect sanctions a piecemeal trial, and the addition of an issue of fact to be determined by the county court following the judgment of the district court does not unduly prolong the litigation. In this way all of the substantial rights of the respondents can be preserved. They have not complained of the amount of the lump sum award, and if they are awarded consequential damages, no rights of theirs will have been violated by the procedure in this case. We find no direct precedent for this holding, but in a case where one of the elements of damages was not susceptible of ascertainment at the time of the taking, it was held that that element could be determined at a later date. United States v. Westinghouse Electric & Mfg. Co., 339 U.S. 261, 94 L. Ed. 816, 70 Sup. Ct. 644. In principle that supports our holding. See also Nichols on Eminent Domain, Vol. 3, Sec. 8.5 (4).

■ The question of the right of the City to enter into possession of the condemned land pending final determination of the damages is not before us. However, in cases in which the condemnor is not exempt from the obligation to post bonds we can perceive no reason why the county court could not require the posting of bonds to cover consequential damages thereafter to be determined as a condition precedent to the right to take possession.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed, but same shall not be *res judicata* as to consequential damages.

Opinion delivered April 20, 1955.

Rehearing denied June 1, 1955.