R. V. KING et al., Appellants,

v.

KANSAS UNIVERSITY ENDOWMENT ASSOCIATION et al., Appellees.

No. 3736.

Court of Civil Appeals of Texas.

Waco.

June 9, 1960.

Rehearing Denied July 7, 1960.

Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson, Houston, for appellant R. V. King.

De Lange, Hudspeth & Pitman, Houston, for appellants Houston Title Guaranty Co.; Pearl G. Hohl, a feme sole; and Florence Ellen Hohl, a feme sole.

Hamblen, Bobbitt & Hamblen, W. P. Hamblen, Jr., Houston, for appellants Willis Culmore and Blanche Culmore.

Ernest A. Knipp, Howard S. Hoover, Samuel Williamson, Henry V. Broady, Houston, for appellees Kansas University Endowment Association, I. S. Deutser, trustee, Sam Williamson, trustee, E. Phil Gemmer and Henry V. Broady.

Stevens, Ludtke & Tarrant, Houston, for appellees Solomon Spriggs and others.

C. F. Tucker, Houston, for appellee E. P. Leal.

Al L. Crystal, Houston, for appellees Frank Brown and others.

John M. Robinson, Houston, for appellees Henry Edwards Koinm and others.

Townes & Townes, Houston, for J. B. Emmons and others.

Steeger, Dohoney, Caldwell & Austin, Houston, for Mimi Whitty and others.

Roberson L. King, Houston, for Vertis Harris.

Buck C. Miller, Houston, for appellees S. G. Bowen & Bowen Construction Co.

Gordon O. McGehee, Houston, for appellee William P. Danforth.

Fred Much, Houston, for appellees Frank Tamborello and others.

H. Fletcher Brown, Houston, for Gladys Deering.

Prentice Wilson, Dallas, for C. M. Cockrell, Jr., and others.

F. T. Baldwin, Houston, for J. S. Welboan.

Ray Stevens, Houston, for Lola Benavides and others.

Morris, Underwood & Oldham, Houston, for D. C. Hillboldt.

Walker F. Johnston, Houston, for Erma Lee Brokaw and others.

Charles L. Kreuger, Austin, for D. C. Hillboldt.

Kucera, Lay & Lightfoot, Houston, for Charles Henry Chernosky, Jr., and others.

Hay, Kirk & Baggett, Houston, for James H. McWhirter.

John E. Cahoon, Houston, ad litem.

James Percivel McKean, Milwaukee, pro se.

Madison Lewis and wife, Elizabeth Lewis, pro se.

R. T. Mumme, Jr., pro se.

Edith Evelyn Swengel Gossett, pro se.

Jerome Gore McKean, pro se.

Ossie Olen Rutledge, pro se.

Eastham & Williams, Houston, for Cyrus S. Gentry and others.

John W. L. Hicks, Houston, for Mrs. Macey F. Baker.

Billy E. Lee, Houston, for C. P. Bullock and others.

Dow & Dow, Houston, for Paul A. Bradley and others.

P. Harvey and Gordon S. Tate, Houston, for H. P. Lynn and others.

A. Jay Bannon, Houston, for Paul E. Armstrong, Sr.

William M. Jones, Houston, for Ambrosia Hill Bowler.

Sidney Wright, Houston, for Margaret & Sam Waples.

Ben Fitzgerald, pro se.

Margaret Irene McKean, pro se.

Katherine Inez McKean Sauby and Wesley P. Sauby, pro se.

Hugh Raleigh McKean, pro se.

TIREY, Justice.

This is an appeal from a judgment rendered in the severed portion of a trespass to try title suit. The case is complex and does not yield to a simple statement. Some time prior to the year 1954, (the exact date not shown) the city of Houston brought a condemnation suit against more than 170 persons for the purpose of condemning property out of the J. S. Collins Survey in Harris County, forming a link in State Highway No. 59. It alleged that there existed an irreconcilable conflict in the titles, boundaries, and locations of the various tracts involved that the City could not agree on the amount of damages with any of the defendants without running the risk of having to pay twice or more for the same right of way. The city, in its pleadings, described the lands condemned in five different tracts, and an award was made for each tract. This trial resulted in total damages being assessed at the sum of $217,932.37, which amount the city deposited in the registry of the Court to await the determination of the titles of the parties in the district court. That judgment became final June 1955 by an opinion of the Supreme Court of Texas. See City of Houston v. Culmore, et al., 154 Tex. 376, 278 S.W.2d 825. See also the opinion of the Court of Civil Appeals, Armstrong v. City of Houston, 272 S.W.2d 556 for plats and drawings. See these opinions for a full background.

This suit involves a trespass to try title suit by appellees against all of the defendants in the original condemnation proceedings, and a large number of defendants who were not parties to the condemnation proceedings to recover certain lots in blocks in the Collins tract addition according to the recorded plat of the addition in Volume "Z" Page 138 of the Deed Records of Harris County, and for a share of the funds in the County Court. The names of the parties and their positions in the suit are stated in the first six pages of the judgment. Appellees impleaded all parties who had any possible claim to any of the land in the condemned right of way or to the deposit. Appellees suit was originally filed in July of 1953, and they went to trial on their fourth amended original petition filed April 1st 1958. This pleading contained the usual formal allegations in trespass to try title and specially plead the five, ten and twenty-five year statutes of limitation; the pleading pointed out the condemnation proceedings and prayed for recovery of title and that the Court fix amounts due appellees out of the funds on deposit with the County Clerk. The judgment recites that the cause came to trial in the 129th District Court on March 17, 1959; that the Court held several pre-trial hearings, and announced that because of the apparent complexities of the case and the large number of parties and counsel the Court would, on its own motion, sever the issues relating to the location of the land from

all other questions in the case, and that upon this hearing the Court would only hear evidence of the location of the land involved. In the judgment we find this recital:

"I have anticipated from the discussion, beginning on the 17th day of March, and continuing on the 31st day of March, that the nature of this total controversy makes it inconvenient, impractical and hardly possible to try the suit within the normal framework of the rules.

"In view of Rule 174(b) [Texas Rules of Civil Procedure] relating to separate trials, and in furtherance of the convenience of the parties and to avoid prejudice, I intend that we will try this main portion of this cause; that is, the trial of the lawsuit pending under Cause 422,750, as one sounding in the nature of a Declaratory Judgment seeking to establish the location on the ground of the perimeter lines of the Collins Tract Addition; and to sever out of this case under a separate cause, 422,750(A) all claims, demands, cross-actions, and all demands for affirmative relief relating to a specific tract of land located within the perimeter lines of the Collins Tract Addition and to hold that severed cause pending final determination of the issues involved in this cause, at which time will be considered appropriate motions to sever, placing within still yet another severed cause, those parties who are immediately affected by a claim to overlapping or identical specific parcels lying within the perimeter lines, it being the intention to provide a final judgment which will locate on the ground, if possible, a beginning point, a reference from which by latitude and departure the exact location by metes and bounds of any specified parcel could be secured in the severed cases.

"And the finding in the main case would be res judicata as to the location of the perimeter lines and only as to those circumstances, and that each of the parties will have their rights in their individual severed case to go forward seeking affirmative relief that their pleadings have announced up to this point in respect to their particular tracts, and that this action would be without prejudice to their rights in regard to their specific tracts, except that it will locate a reference point from which their land must be located."

The Court granted all the disclaimers. At the conclusion of the testimony all requested motions for peremptory instruction were overruled, and the case was submitted to the jury on four issues. The jury was unable to answer any of the issues, and while the jury was considering its verdict, appellees made an oral motion to withdraw the cause from the jury and to render judgment upon all the grounds stated in the motion for directed verdict and with permission to reduce the motion to writing and file it, which was granted. A number of defendants filed similar motions. The Court granted the motion to withdraw the cause from the jury and to discharge the jury, and in the judgment we find this recital:

"*The Court finds as a matter of law that the uncontradicted evidence shows that there is no dispute about the location on the ground of the J. S. Collins Survey, or about the location on the common boundary lines with adjoining senior surveys, or the common boundary line with the J. T. Harrell Survey, a junior survey; and that said boundaries are recognized and occupied boundary lines established on the ground;* (emphasis added) that said J. S. Collins Survey is a survey within the corporate limits of the City of Houston, lying approximately three (3) miles in a northerly direction from the Courthouse; that the corners, lines and boundaries of the J. S. Collins Survey were generally recognized for more than ten (10) years prior to the filing of this suit and have been generally recognized and acquiesced in; that the

northeast corner of the J. S. Collins Survey is the point shown on Plaintiffs' Exhibit 31 as Point A, and being a point in the west line of the Harris and Wilson Survey in the intersection of the street now known as Kelly Street (which includes the area designated as Adams Street on the recorded plat of the subdivision) with Hirsh Road (which includes an area designated as York Street on the recorded plat) said point A being indicated on Exhibit 31, a reduced photo copy of which is attached hereto and made part hereof; said Point A being located by the evidence at a point in the west line of the Harris and Wilson Survey two thousand nine hundred seventy nine (2979) varas, (eight thousand two hundred seventy five (8275) feet) north 0 degrees 42 minutes west of an iron pipe in a fence corner, said pipe in the fence corner being the southeast corner of said Collins Survey; or stated in another way said Point A is in the West line of the Harris and Wilson Survey ninety five and twenty five hundredth (95.25) feet north of the south-line of the North Loop Highway (Kelly Street) and north 89 degrees 18 minutes east along the north line of J. S. Collins Survey one thousand three hundred sixty-four (1364) varas (three thousand seven hundred eighty nine (3789) feet) from the fenced west line (extended north) of Collins Tract Addition, the extension of said fence line being a point in Kelly Street north 89 degrees 42 minutes west of the end the existing long established fence line marking the west boundary line of the Collins Tract Addition, and being located in the original north boundary line of the J. S. Collins Survey five hundred (500) feet north 89 degrees 18 minutes east from the east line of Jensen Drive, which is one of the main north and south thoroughfares now existing in said area.

"The Court concludes as a matter of law from the undisputed evidence that the conveyances executed in 1862 and prior years show clearly that the parties purported to deal with a tract of land out of the northeast corner of the J. S. Collins Survey which was supposed to contain an area of two hundred fifty nine (259) acres, but which in fact contained a lesser area; that the shortage arose by reason of the fact that the second call in the various instruments describing the tract (from point B on Plaintiffs' Exhibit 31 to point C on Plaintiffs' Exhibit 31) could not be given effect for the called distance of one thousand three hundred sixty five and one-half (1365½) varas; and that the distances on the east boundary lines of the Collins Tract Addition were necessarily shortened accordingly; that the total distance across the J. S. Collins survey from point B to point C was actually one thousand two hundred two and one-half (1202½) varas, or three thousand three hundred thirty-nine and four-tenths (3339⁴⁄₁₀ths) feet; that since the instruments plainly dealt only with land in the northeast corner of the J. S. Collins Survey, there is no warrant for extending the second call beyond the south boundary line of the Collins Survey, which is a common boundary line with the north boundary line of the S. M. Harris Survey, a senior survey.

"The Court finds that there is a minor variation in direction in the first call in the description of the tract subsequently platted as the Collins Tract Addition, but in view of the fact that it was obviously intended to describe a tract out of the northeast corner of the Collins Survey, said call can be given effect by extending it from the northeast corner of the J. S. Collins Survey (the called beginning point) along the north boundary line of such survey, a distance of one thousand three hundred sixty-four (1364) varas, the distance called for in the instruments in evidence and as shown by upper boundary line of the Collins Tract Addition as indicated on the recorded plat, (it being recognized that the recorded plat indicates on its face no directions, the word 'upper' as here used referring to the relative position of the line on the County Clerk's record). The Court finds that the north boundary line of the Collins Sur-

vey, and, therefore, the north boundary line of the Collins Tract Addition has been long recognized on the ground as reflected by the evidence of occupation of land in the Collins Survey and in the adjoining J. T. Harrell Survey, and plats of surveys of land, plats of additions purporting to be in the J. T. Harrell Survey, all which recognized the common boundary between the J. T. Harrell Survey and the J. S. Collins Survey as herein delineated; that said north boundary of the Collins Tract Addition extends north 89 degrees 18 minutes west, one thousand three hundred sixty-four (1364) varas (three thousand seven hundred eighty-nine (3789) feet) from the northeast corner of the Collins Survey along its north boundary line, said point being designated on Plaintiffs' Exhibit 31 as point B; that the western boundary line of said Collins Tract Addition extends from the western terminus of the northern boundary just indicated (point B, Exhibit 31) south 0 degrees 42 minutes east one thousand two hundred two and one-half (1202½) varas (three thousand three hundred thirty-nine and four tenths (3339⁴⁄₁₀ths) feet) to the upper south boundary line of the J. S. Collins Survey, which is also the north boundary line of the S. M. Harris Survey; that the lower south boundary line of said Collins Tract Addition extends thence from point C along the said upper south boundary of the J. S. Collins Survey five hundred thirty-four (534) varas (Fourteen hundred eighty three and ³³⁄₁₀₀ (1483.33) feet) to an interior point in the J. S. Collins Survey.

"The Court finds that the eastern boundary of the J. S. Collins Survey is a common boundary line with part of the west boundary line of the Harris and Wilson Survey, which is a senior survey; and that the eastern boundary line of the Collins Tract Addition as it existed at the time of the recording of the plat of Collins Tract Addition, could be given effect for its full called distance of eight hundred seventy-three and one-half (873½) varas; and

that said boundary line at said time existed on the ground and extended South 0 degrees 42 minutes east from the northeast corner of the J. S. Collins Survey (point A, Exhibit 31) eight hundred seventy-three and five tenths (873.5) varas Twenty four hundred twenty six and ³⁹⁄₁₀₀ (2426.39) feet.

"The Court finds that the remaining two boundaries of the tract of land platted as Collins Tract Addition can and should be given effect under established rules of construction by extending them as follows: The upper south boundary of the Collins Tract Addition, and of the so called two hundred fifty-nine (259) acres, is established as extending from the terminus of the eastern boundary line just mentioned in a direction parallel with the north boundary line of said addition as above fixed to a point where it intersects a line drawn from the terminus of the above fixed lower south boundary of such alleged two hundred fifty nine (259) acre tract in a direction parallel with the west and outer east boundary lines of the Collins Tract Addition as above fixed; and that, therefore, at the time the partition deed was executed by Baker and Tankersley, (Plaintiffs' Exhibit 21), the tract of land which was actually owned and which was the subject of partition by them was located as follows:

"Beginning at the northeast corner of the J. S. Collins Survey, and the west boundary line of the Harris and Wilson Survey at Point A, above fixed;

"Thence south 89 degrees 18 minutes west, 1364 varas;

"Thence south 0 degrees 42 minutes east, 1202⁵⁄₁₀ths varas;

"Thence north 89 degrees 18 minutes east, 534 varas;

"Thence north 0 degrees 42 minutes west to the point of intersection of a line extended south 89 degrees 18 minutes west from a point 873½ varas south of the northeast corner of the J. S. Collins Survey

on the common boundary of the J. S. Collins Survey and the western boundary of the Harris and Wilson Survey;

"Thence north 89 degrees 18 minutes east to the Western boundary line of the Harris and Wilson Survey;

"Thence north 0 degrees 42 minutes west 873½ varas to the place of beginning.

"The Court finds that it was the intention of Baker and Tankersley to partition said tract, and that said land so owned by them is the land which is covered by the plat recorded in Volume Z, page 138, of the Deed Records of Harris County, Texas filed and recorded June 14, 1862 (Plaintiffs' Exhibit No. 22). *The Court finds that said plat is the only map or plat of said subdivision found in the record of the County Clerk of Harris County, Texas; that after the plat was recorded in 1862 and ever since for a period of more than ninety (90) years, conveyances have been executed and delivered, and lots and blocks in the subdivision have been sold, used and occupied under instruments which purported to convey land in such subdivision described as lots and blocks by reference to said plat, and usually without any other description.* (emphasis added)

"This judgment in the nature of a Declaration of Rights shall be without prejudice to the rights of any of the parties to establish title to any tract of land within the boundaries of Collins Tract Addition as above indicated, whether such claims be by record title, by limitation or otherwise; provided, that the location of the several boundaries of the Collins Tract Addition as herein fixed shall be final and binding upon all parties to this cause. Trial of claims to any tract of land within the boundaries of Collins Tract Addition as herein fixed shall be limited to title only and location by reference to the measurements and boundaries herein fixed.

"A statement of the evidence, approved and signed by the undersigned Judge, is filed with the papers in this cause as a part of the record thereof."

Many of the defendants excepted, and defendants, King, Houston Title & Guaranty and Blanche and Willis Culmore, et al., have perfected their appeal to the First Supreme Judicial District of Texas, and the cause is here on transfer.

Appellant, King, assails the judgment on two grounds; the title company on seven, and the Culmores on one. Each appellant contends in effect that the evidence raised disputed ultimate issues of fact relative to the location upon the ground of the blocks comprising Collins Tract Addition which were properly submitted to the jury, and the jury having failed to reach a verdict the Trial Court erred in withdrawing the cause from the jury, and in making the fact findings and rendering judgment for the plaintiffs. Applicable Rule see Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, w. r., Points 8 and 9, and Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, Points 5 and 6.

A statement is necessary. The appellees and all the parties who seek to locate the Collins Tract Addition out of the northeast corner of the J. S. Collins Survey, do so upon the theory that the upper line of the plat is coincident with the north line of the J. S. Collins Survey. In so doing they rely primarily upon the testimony of surveyor Atkinson and many exhibits tendered in evidence. The testimony of this witness and the exhibits introduced in connection with his testimony is quite extensive and covers several hundred pages of the Statement of Facts. Mr. Atkinson testified to the effect that he had done exhaustive work on the ground directed toward locating the J. S. Collins Survey. At the conclusion of his direct testimony the Court permitted him to express his opinion as an expert witness that the only proper method of locating the Collins Tract Addition upon the land to which the claimed *subdividers held title is to assume that the upper line of the subdivision as platted is coincident with the north line of the J. S. Collins Survey and*

*to lay out the various blocks and streets according to their called dimensions southerly from that line.* Mr. Atkinson based his opinion in part on the undisputed recitations in the exhibits, plus all the surrounding facts and circumstances as he found existing on the ground, plus his knowledge and application of the rules of surveying. The record shows that on April 28, 1947, D. Gregg conveyed to W. R. Baker and B. Tankersley by deed recorded in Volume "Q", Page 89, Deed Records, Harris County, 259 acres in the J. S. Collins Survey. The field note description of the land described the beginning at the northeast corner of the J. S. Collins Survey and the first call is in a westerly direction substantially along the north line of the J. S. Collins Survey. Subsequently there was filed on June 14, 1862, in Volume "Z", Page 138, Deed Records, Harris County, an instrument designated "Map of the Collins Tract Addition to the City of Houston". Appellees contend that this map was prepared and filed for record by Baker and Tankersley and they believe they intended to subdivide the land conveyed to them by Gregg. The appellees further contend that because the conveyance from Gregg to Baker and Tankersley described the land by field note description, calling to begin at the northeast corner of the J. S. Collins Survey, thence westerly substantially along the north line of J. S. Collins Survey, that it follows that the subdivision plat must be located on the ground with its upper line coincident with the north line of the Collins Survey. Mr. Atkinson specifically testified in part with reference to this particular matter as follows:

> "Q. * * * Mr. Atkinson, your reason for starting at the north line of the Collins Subdivision and undertaking to lay upon the ground available the Collins Tract Addition, going southwardly, is that the deed into Baker and Tankersley calls to begin at the northeast corner of the Collins Survey? A. Yes.

> \* \* \* \* \* \*

> "Q. Now, then in undertaking to find out how this subdivision was laid upon the ground from a surveying standpoint, the theory, at least, is to put yourself in the position of the original subdivider or surveyor and follow his footsteps, is it not? A. Yes.

> "Q. Does it sound logical at all to you, Mr. Atkinson, that the original subdivider or surveyor, whoever laid out the Collins Tract Addition, in numbering his blocks would have begun with No. 109 and worked down and up from that number? A. No.

> "Q. It is necessary to assume that he did so in order to adopt your theory of how to lay that subdivision on the survey, is it not? A. No. I don't think the—I don't think he ever went on the ground.

> "Q. You don't think he ever went on the ground? A. I don't think the man that made this plat ever staked it on the ground.

> \* \* \* \* \* \*

> "Q. Mr. Atkinson, * * * from an engineering standpoint, * * * there is an irreconcilable conflict between the purported subdivision called Collins Tract Addition and the ground available to place it in? A. That's correct. There is not enough room to get it all in there.

> "Q. It is just impossible to do? A. Unless you let it conflict with other properties.

> "Q. If you start at Labady Street as you found it upon the ground, and lay out the necessary streets and blocks in a northwardly direction, you run out of land up on the north? A. Yeah. You go on over into the Harrell Survey. Really ball the whole country up good.

> "Q. You would lose the same number of blocks and half blocks across the north half of the subdivision as we

have lost across the south under your theory, would you not? A. That's right. It's the same whether you move it up or down.

"Q. The Collins Tract Addition has been a problem among surveyors in Houston for a long time, has it not? A. That is for sure. It sure has.

"Q. And there are a great number of very competent surveyors who have reached a different conclusion from that which you have reached? A. Yeah. You almost lose your mind sometimes working with this thing.

"Q. And your only reason that you have expressed to this Court and this Jury for beginning at the north and going south is that the conveyance into the people whom you assume made the subdivision begins at the northeast corner of the survey? A. Yes. And I think that is a rule of surveying. It has to be followed.

"Q. And that, in spite of the fact that the only reference on the map that you found upon the ground is Labady Street? A. Yes.

"Q. And in spite of the fact that the lots begin No. 1 immediately north of Labady Street and go north consecutively numerically? A. That is the way the plat goes all right.

"Q. And you don't think there would be any logic at all in assuming that Labady Street is the proper place to begin, and run out of land on the north rather than on the south?

 *   *   *   *   *   *

"A. I think that is illogical, yes."

He further testified in part:

"Q. I take it from the explanation you made a moment ago that you gave some weight to the fact that the deed into Baker and Tankersley begins at the northeast corner of the Collins Survey? 'A. Yes.

"Q. So you  *  *  *  did assume that the subdivider began at the same point? A. I assume that.

"Q. So you went the call for distance westwardly, laying out the distance according to the widths. of the streets and the area of the blocks until you reached what you assumed to be the northwest corner, and then you turned in a southerly direction —I forget the exact call—but it's more or less south—and you went south laying out the width of the streets and the width of the blocks shown on that plat, and the only trouble was that when you came to the south line of the Collins Survey that you had established, you didn't have enough land to lay out all of the streets and all of the blocks shown? A. That's right. There wasn't enough land there.

"Q. So as a consequence, on the map that is exhibited on the blackboard, which, I believe, is Plaintiffs' Exhibit No. 31, there are missing an entire tier of blocks across the south end of the Collins Tract Addition, plus a half a tier lying immediately north of that? A. That's right.

"Q. There are a total loss of block 1, block 24, block 25, block 48, block 49, block 68, block 69, block 84, block 85, block 100, block 101 and block 116? A. That's correct.

"Q. And then substantially half of blocks 2, 23, 26, 47, 54, 67, 70, 83, 86, 99, 102 and 115? A. That's right. Parts of those.

"Q. And according to the best theory that you could devise, and after a very considerable amount of work, it is your opinion as a surveyor that the proper way to lay out that subdivision is the manner that you have, using the center line of Kelley Street for the north line of the J. S. Collins

Survey as the north line of the Collins Tract Addition? A. Yes, sir.

"Q. And in doing so you lost 12 full blocks and 12 half blocks? A. That's right.

"Q. * * * all along the south of what would have been the addition? A. Yes."

He further testified:

"Q. It is obvious that all of the blocks and streets there were platted either at the same time or as a part of the same series before this plat was filed? Isn't that correct? A. That's right.

"Q. Now, your entire theory of location of the blocks within this available area is based upon the assumption that the person preparing this plat started at the northeast corner of the J. S. Collins Survey, isn't it? A. That is my theory, yes. That is the —that is what I honestly belief."

Mr. Lozano, a surveyor, testified to the effect that he was familiar with what is known as the Collins Addition and had been for some 15 years; that he had been called upon to attempt to locate the property in the area according to the Plaintiffs' Exhibit No. 22, which is the plat of the Addition here referred to, but that he had not done so, and that his reason was:

"Well, I know—or, rather, I have known long before I even started doing any—any work on the ground, actually, that enough conflicts existed or discrepancies, I might say, in the Collins Tract as to prohibit the placing of a block or lot out of a block without its being in conflict with other lots within the subdivision.

"Q. Now, from an examination of that Plaintiffs' Exhibit No. 22 that you hold, and Plaintiffs' Exhibits Nos. 12 and 21, and No. 15 here, is there anything there that would indicate to you that, as a surveyor, you should give

any priority to any one corner or any one line shown on that plat in preference to any other one as a starting point? A. Not in my opinion.

"Q. Well, independently of those instruments, do you know of any fact that would cause you, as a surveyor, to give priority to any one corner or any one line in preference to any other as a starting point in attempting to locate any block within that area? A. No, because as a surveyor I would have to rely on the existence of a line being recognized or acquiesced to as being a line marking a tier of blocks or a block, and since that is not in existence, according to my work within the Collins, I—I am unable actually to place any lot with reference to any line, and that I know I could not possibly give a preference to a line and forget the conflict that I would be putting on the blocks adjacent to the other lines.

"Q. From your knowledge of the general reputation concerning this area that is defined on Plaintiffs' Exhibit No. 31, has that reputation been one of acquiescence in locations of blocks within the area? A. Not to my knowledge.

"Q. What causes the conflict of which you speak in attempting to locate blocks within that area? A. Well, there definitely is a shortage east and west, as well as north and south, which in the face of the actual occupation of the perimeter of the Collins Tract I feel that it is impossible to actually—from a surveyor's viewpoint—at least, my own—to actually determine where that shortage would be. All that I know is that there is not enough room to actually place all of the lots or blocks shown on this plat in the tract that is recognized as the Collins Tract Addition.

* * * * * *
"Q. * * * In your opinion as a surveyor, can you locate the blocks

shown on Plaintiffs' Exhibit No. 22 within the area shown here on Plaintiffs' Exhibit No. 31, between the points, A, B, C, D–1, E and D–4, so as to give effect to the whole plat that is shown by Plaintiffs' Exhibit 22 there? A. No, sir.

"Q. There just isn't enough land shown to place all of those blocks in it, is there? A. Absolutely not."

As we understand appellants' position it is to the effect that the opinion evidence of Mr. Atkinson, plus all the facts and surrounding circumstances shown by this record tenders an issue of fact which should be determined by the jury, and that the Court was without authority to take it away from the jury. They contend that the map of the Collins Addition reflects a street along its lower line by the name of Labady Street; that located on the ground along the south line of the Collins Survey is a street also by the name of Labady. Mr. Atkinson testified that there is no other street existing on the ground that bears a name identifiable with any street named in the map of Collins Tract Addition. Labady, and its location on the ground, is some evidence that whoever named it gave some recognition to the effect that the subdividers of the Collins Tract Addition intended the north line of such street to coincide with south line of J. S. Collins Survey; that the plat reflects that the various blocks therein are numbered consecutively from 1 through 116; that the plat shows that block No. 1 is in the lower left corner immediately north of and adjacent to Labady Street, and that the blocks are numbered consecutively from that point to the north; that whether the map is an office survey or not, the foregoing circumstances support the inference that whoever prepared it began at the south and worked to the north. To accept appellees' locative theory would require that the draftsman began in the upper righthand corner of the map with block No. 109, and proceeded both up and down the numer-

ical scale so as to come out even with block one in the lower left corner; that adjacent to the Collins Tract Addition on the east is a subdivision called "Crane Street Woods". On it appears a street named James Street. There is also a James Street shown upon the map of the Collins Tract Addition. If it be assumed that the lower line of the subdivision coincides with the south line of the J. S. Collins Survey, and from that point the streets and blocks as platted are laid out on the ground with their stated dimensions, the eastern terminus of James Street in Collins Tract Addition coincides with the western terminus of James Street in Crane Street Woods Addition. The appellants here contend that the foregoing is some evidence of recognition by the subdividers of Crane Street Woods Addition that the subdividers of the Collins Tract Addition intended that the south line of the addition should coincide with the south line of the J. S. Collins Survey.

When the condemnation proceedings involving the parties in this cause were before our Supreme Court in City of Houston v. Culmore, supra, that Court had occasion to examine the plat here in question, and after stating specifically what it contained, made the following significant statement [154 Tex. 376, 278 S.W.2d 828]:

"* * * According to field notes of the plat there was approximately 259 acres of land included therein, but the actual acreage on the ground is approximately 217 acres.

"The mere recital of the above facts is sufficient to make a prima facie showing of irreconcilable conflicts in the location and boundaries of the various blocks. The shortage of more than forty acres of land must be adjusted in some manner, and with no fixed corners or calls for joining with any established point on the ground, the location of any block described only by reference to the plat appears uncertain.

"A consideration of the theories of the respective parties will reveal with certainty that real conflicts of claims exist which must be resolved by the district court."

The foregoing statement of our Supreme Court is binding on us and the trial court. It is true that the shortage under the record here amounts to approximately 15 acres, but the conflicts in the location of the boundaries of the various blocks still exist.

In the appellees' brief we find the following statement which we believe is significant:

"Both the documentary evidence and the oral testimony in this case, aside from the deposition of A. C. Stimson, *all show almost conclusively* the tract which was intended to be covered and the errors which were made." (Emphasis added).

This court has given much consideration to a careful study of the evidence tendered and has carefully followed the testimony of surveyor Atkinson, along with the exhibits tendered in connection with his testimony, together with the testimony of surveyor, Lozano, and we are of the view that this record presents an irreconcilable conflict in the boundaries of the Collins Tract Addition, and inasmuch as the parties exercised their right to try it before a jury, we think the Court erred in taking the cause from the jury and in making the findings it did and in entering judgment thereon. As we understand our Supreme Court, it has uniformly held that the question of boundary in a trespass to try title suit like that of adverse possession, is one of fact. See Greene v. White, 137 Tex. 361, 153 S.W.2d 575, Point Pages 582 and 583, 136 A.L.R. 626; also Randall v. Gill, 77 Tex. 351, 14 S.W. 134.

We have given much consideration to the opinion of our Supreme Court in City of Houston v. Culmore, supra, and we note with much interest the statement by the Supreme Court contained under Point 4 on page 829 of 278 S.W.2d. We fully appreciate the fact that the statement therein made is by way of suggestion to help solve a very complex and complicated situation; however, it occurs to us that the attorneys for the parties and the trial court should give careful consideration to the suggestion as outlined by our Supreme Court as to trial and disposition of this matter.

Since this cause must be reversed and remanded, it would serve no useful purpose to discuss either of the other Points raised by appellants.

Accordingly, this cause is reversed and remanded.