F. I. DYER, Appellant,

v.

The STATE of Texas, Appellee.

No. 5677.

Court of Civil Appeals of Texas.

El Paso.

Feb. 17, 1965.

Finley & Scogin, Kermit, for appellant.

Waggoner Carr, Atty. Gen., Charles Lind, Leslie King, T. B. Wright, Ass't Attys. Gen., Austin, Ed Keys, Monahans, for appellee.

CLAYTON, Justice.

This is a condemnation case filed in connection with the construction of a road in Ward County, Texas for which the county is acquiring right of way and 50% of the expense of which acquisition is to be reimbursed by the State of Texas. Plaintiff's (appellee's) Statement was filed in the County Court of Ward County, and thereafter Special Commissioners were appointed who assessed the damages to the owner-appellant from the taking of the right of way easement at $4,372.50. Date of taking was fixed at January 16, 1961. The State filed its Objections to said award of damages and the matter was tried before a jury. In answer to special issues the jury found that the market value of the land taken was $7,500.00 and that the value of the owner's remaining land remained the same after the taking. Judgment was rendered on this verdict and the landowner appeals.

Appellant presents twenty-seven points of error arranged in various groups, which grouping will be followed, in general, by this court. The first nine points relate to the testimony of one Lomax, a witness for the State, while Points Ten through Twelve level similar complaints against the testimony of one Rash (Raish?), another State's witness. The complaints include alleged error in allowing the witnesses to testify on direct examination to the mental processes by which each witness arrived at his opinion or conclusion as to the value of property, with no limitation of purpose for which such testimony was offered; that such testimony involved the examination of deed records and revenue stamps and statements of third persons, all of which was hearsay, and also involved remote sales of improved property as compared to the unimproved property in this cause, all without limitation as to purpose.

A review of the record fails to reveal that any objection was made to the admission of the indicated testimony unless limited to the purpose for which it was admitted. The objections to the testimony seem to be confined to the fact that it involved hearsay or as to remoteness of comparable sales, together with the complaint that the witnesses were allowed on direct examination to reveal the details or mental processes by which each witness arrived at his conclusion as to the value of the land at issue. This last objection seems to be based upon certain language in the Supreme Court decision in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 816: " * * * but inquiry into the details or mental processes by which the witness arrives at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment." This language in the Cannizzo case is, however, modified in the later Supreme Court decision in State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, where, at page 914, it is stated:

"In a sense, of course, testimony of an expert witness concerning comparable sales which he has considered in reaching his opinion touching the value of the property under consideration involves an inquiry into the mental processes of the witness; the real question, however, is whether such testimony, which is inadmissible to prove the facts of such sales as evidence of the value of the property condemned, is likewise inadmissible in another capacity, that is, to show a basis of the opinion value stated by the expert witness and in which capacity the testimony is not hearsay in the true sense. The better reasoned view, in our opin-

ion, is that the testimony is proper in such latter capacity, where, as in the case at bar, the testimony is given by a professionally qualified appraiser whose qualifications, and the comparability of the sales to which he testified, are not challenged. The discretion of the trial judge, particularly in these latter respects, together with the opportunity on cross-examination to bring out facts contradictory to the statements and conclusions of the expert, and the instruction of the court limiting consideration by the jury of the testimony beyond the purposes for which it was admitted, are substantial safeguards against its misuse. Moreover, whatever facilitation of expert testimony in a condemnation proceeding there may be under our holding is available alike to the condemnor and condemnee."

The same holding is found in a still later Supreme Court case: State v. Baker Bros. Nursery, Tex., 366 S.W.2d 212, where such testimony was offered for the "limited purpose of showing what the appraiser considered in arriving at his opinion of the value" and not as direct original evidence of the facts stated therein, and the court admitted such testimony for this limited purpose. See also the 1964 Civil Appeals case of State v. Rumery, 381 S.W.2d 87 (ref., n. r. e.), in which the court states, at pages 89 and 90:

"In the search for market value the information an appraiser might gain from sales here shown is worthy of note, though the tracts are dissimilar in very important respects. There are safeguards against these sales being accorded weight by the jury other than as a factor considered by the appraiser in arriving at his value conclusion. The court's instruction limiting the purpose for which the evidence is admitted and cross examination that emphasizes the negative aspects of comparability are the protective shields of the party re-

sisting the impact of the appraisers' testimony." (Citing cases).

While we feel that on the basis of the above authorities the complained-of testimony of the two witnesses, Lomax and Rash (or Raish), was probably not admissible without a limiting instruction by the court, if such limiting instruction had been requested, we fail to find in the record any request that the testimony be so limited to the purpose for which such testimony was admitted. See Fisher Construction Company v. Riggs, 320 S.W.2d 200, 209 (Civ.App., 1959, rev. other grounds, 160 Tex. 23, 325 S.W.2d 126); Travelers Insurance Company v. Barrett, 366 S.W.2d 692, 695 (Civ.App., 1963, n.w.h.), in the latter of which it is held: "Had there been a request on the part of the defendant to limit the purpose for which the testimony might be considered it unquestionably would have been so limited by the trial court, but no such request was made", citing the Riggs case and 17 Tex.Jur. 361, § 122. In the appellant's amended motion for new trial, containing 37 assignments of error, only two assignments relate to the failure of the trial court to limit the testimony. These assignments are in identical language, one directed to Lomax' testimony and the other to Rash or Raish's testimony, and read as follows: "The error of the Court over objection of Defendant in permitting Plaintiff's witness, —————————, on direct examination to go into hearsay sales with no limitation thereon but for the reason of prejudicing the Jury with certain sales picked from the records by Plaintiff's expert witness, —————————, and disregarding others." We do not feel that these assignments properly preserved the alleged error, nor do we feel that the error (if such it was) amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Rule 434, Texas Rules of Civil Procedure. The Commissioners' award to appellant was $4,372.50, and the jury awarded appellant

$7,500.00 damages. The first twelve points of error are overruled.

■ We find no merit in the thirteenth and fourteenth points of error complaining of the court having permitted State's counsel, over objection, to cross-examine one of appellant's witnesses on the definition of an appraiser, and the difference between an appraiser and a realtor. The points are overruled.

■ In his fifteenth through twentieth points of error appellant assigns as error the overruling of his motion for dismissal of the cause after the State had rested, and in overruling appellant's motion for new trial for the failure of the State to prove "negotiations" and its failure to prove that prior to filing its petition in condemnation that it had made an effort in good faith to agree with the defendant on compensation for the land taken and in damages to the remainder of the land involved; for failing and refusing to submit a requested special issue inquiring of the jury whether such an effort had been made and in finding as a fact that all prerequisites and jurisdictional facts had been complied with, since there was no evidence, and no competent evidence, and insufficient competent evidence to sustain a finding that the State had made such a bona fide effort to agree with appellant prior to filing petition herein.

Section 3264 of Title 52, "Eminent Domain", Texas Revised Civ.St., sets out the rules of procedure to be followed by a condemning authority. It states in part: " * * * the party desiring to condemn the property after *having failed to agree* with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated. It shall describe the land * * * and that the plaintiff and the owner have been *unable to agree* upon the value of the land or the damages." (Emphasis supplied). Such a statement was filed in this case, al-

leging inability to agree with F. I. Dyer, the owner of the property, and in support of such allegation the State put the County Judge, as Judge of the Commissioners' Court, on the stand and the following transpired:

"DIRECT EXAMINATION

"*By Mr. Lind*:

"Q Judge Estes, are you familiar with the subject property, the Dyer property under condemnation?

"A I am.

"Q Do you know the owner, Mr. F. I. Dyer?

"A I do.

"Q Did you make Mr. Dyer an offer?

"A I did.

"Q What did he do, sir?

"A He refused the offer.

"MR. LIND: Pass the witness.

"CROSS EXAMINATION

"*By Mr. Finley*:

"Q Judge Estes, at the time that you talked to Mr. Dyer, did you make just one offer and that was all.

"A Just one.

"Q Without stating the amount, was that the amount that was selected by the state that you were told to make an offer to him?

"A I shall answer it this way, I was limited by what I could offer him by the State on a 50-50 right of way.

"Q Then actually you could not raise that price, that's what I was get-

ting at, you were limited, and you couldn't raise that price?

"A Correct.

"Q So all that you could do, you couldn't negotiate, all you could do was just make him an offer.

"A That's right.

"MR. FINLEY: I believe that's all, thank you."

The foregoing constitutes all the evidence in support of the "failure to agree" allegation. However, the record further recites that the owner of the land was duly notified of the hearing before the Special Commissioners and that he was present at such hearing and the granting of award of damages. According to the holding in Jones v. City of Mineola, 203 S.W.2d 1020, 1023 (Civ.App., 1947; wr. ref.), had appellant made his appearance before the Special Commissioners and resisted the condemnation proceedings upon the merits, he would have waived whatever lack of efforts to reach a settlement there might have been. The record is silent as to the extent of participation indulged in by appellant at the hearing, but the appellant filed no plea in abatement or other pleading raising the jurisdictional question of the absence of a prior bona fide effort to reach agreement with the landowner, and under these circumstances we deem the matter to have been waived, even if the testimony quoted above should be considered insufficient to establish the question as a matter of law. See Rayburn, Texas Law of Condemnation, pages 268, 269, sec. 72(2); Rule 279, T.R.C.P.

■ Special Issue No. Two, as submitted to the jury, is as follows:

"SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence, if any, that the market value of the Defendant's remaining land was de-creased, increased, or remained the same in value as a result of the taking by the State of Texas of the 17.49 acre strip of land and the use to be made of said strip? Answer 'increased', 'decreased', or 'remained the same'."

The jury answered "Remained the same". Appellant attacks, in Points Twenty-one through Twenty-three, the judgment based on the answer to this special issue for the reasons that there was no evidence, or no competent evidence, or insufficient competent evidence, to warrant this jury finding. In support of this contention appellant points out that two witnesses asserted the remaining land had decreased in value in the amounts of $16,070.00 and $17,290.00, respectively, while two other witnesses testified the value had increased in the amounts of $5,057.00 and $3,700.00, respectively. In overruling a similar contention, the court in Coastal Transmission Corporation v. Lennox, 331 S.W.2d 778, 782 (Civ.App., 1960, n.w.h.) held: "They [the jury] valued the land, both that condemned and the remainder, and both before and after taking, well within the range between the highest and lowest estimates of the expert witnesses and well within the range between the highest and lowest sales prices of comparable lands, as shown by the record." The same was done in this case. These points must be overruled.

Appellant's twenty-fourth point is abandoned on appeal.

■ In appellant's final points, Twenty-five through Twenty-seven, the judgment is attacked as being based upon the jury's answer to the first special issue which found that the value of the land taken was $7,500.00, which is claimed to be inadequate, and that the jury's findings reflected passion and prejudice against the appellant. It is pointed out that the testimony as to the value of the 17.49 acres taken ranged from $1,250.00 per acre to $315.20 per acre, while the jury finding of $7,500.00 was $428.81

per acre and the value of the remaining property did not change. Here again we refer to the holding in Coastal Transmission v. Lennox (supra) in support of the answer of the jury to Special Issue No. One as being within the range of testimony and therefore supported by the evidence. The language of the Commission of Appeals in an adopted opinion in Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S. W.2d 334, 335, is appropriate here:

"* * * we would not be justified in assuming that prejudice or improper influence was responsible for the jury's answers convicting defendant in error of contributory negligence when there is in the record substantial evidence supporting those answers and no evidence that prejudice or improper influence entered into or caused them." (Citing cases).

The last three points of error are without merit and are overruled.

Having reviewed all points, and finding no error in this cause, the judgment of the trial court is affirmed.