Ed F. LOHMANN, Rodney Christ, R. B. Christ, and Elvan Bourque, Appellants,

v.

NATURAL GAS PIPELINE COMPANY OF AMERICA, a Corporation, Appellee.

No. 7007.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 21, 1968.

Rehearings Denied Dec. 11, 1968.

Gilbert T. Adams, Beaumont, for appellants.

Keith, Mehaffy & Weber, Beaumont, for appellee.

STEPHENSON, Justice.

This is an eminent domain case. Judgment was rendered upon the jury verdict. Defendants have brought this appeal. The parties will be referred to here as petitioner and defendants, as in the trial court.

■■■ Defendants' first series of points of error attack the authority of petitioner to condemn the land in question for the purpose of constructing and operating a gas pipeline, because petitioner is not a common carrier and the permit granted by the Federal Power Commission (hereinafter referred to as the F.P.C.) is invalid for a number of reasons. As grounds for the invalidity, it is argued that defendants were given no notice of the hearing before the F.P.C. at which it was determined that the permit should be granted, and that the permit does not give the course and distance or field notes in order to identify the land which was being condemned.

These points of error constitute a collateral attack upon the order of the F.P.C. granting such permit. It is alleged by petitioner: That petitioner owns and operates an interstate pipeline system for the transportation of natural gas from points in Texas to Chicago, Illinois; that it is a natural gas company as that term is used in the Natural Gas Act; that it holds a certificate of public convenience and necessity issued by the F.P.C. on its docket No. CP–65–196 on August 10, 1965, authorizing the construction, operation, and maintenance of a pipeline in extension of its present system, extending from Texas, northeasterly to Chicago, Illinois; that by virtue of the provisions of Section 7(h) of the Natural Gas Act and the laws of the State of Texas, petitioner is vested with the right of eminent domain. A part of the certified copy of the F.P.C. order of August 10, 1965 reads as follows:

*The Commission finds further:*

(1) The Natural Gas Pipeline Company of America, a Delaware corporation having its principal office in Chicago, is engaged in the transportation of natural gas in interstate commerce and the sale in interstate commerce of natural gas for resale and it is a natural gas company as defined in the Natural Gas Act.

\*     \*     \*     \*     \*     \*

*The Commission orders:*

\*     \*     \*     \*     \*     \*

(B) A temporary certificate of public convenience and necessity is issued to Natural Gas Pipeline Company of America authorizing it:

\*     \*     \*     \*     \*     \*

3. To construct, but not operate, facilities to transport natural gas to be produced from reserves located in the West Cameron Blocks 17–49 Field Area, south Louisiana, to a point of connection with Natural's existing Gulf Coast line in Montgomery County, Texas.

A certified copy of a map on file with the F.P.C. showing the proposed gas line indicates the line starts in Cameron Parish and passes through Jefferson and Liberty Counties to reach a point in Montgomery County.

15 U.S.C.A. Sec. 717, which is the "Natural Gas Act," provides generally: That the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest; that no natural gas company shall undertake the construction of any facilities therefor unless there is in force a certificate of public convenience and necessity issued by the Commission; that applications for certificates shall be made in writing to the Commission, under oath, in such form and contain such information, and notice thereof shall be served upon such interested parties, and in such manner as the Commission shall, by regulation, require; that the Commission shall set the matter for hearing and give such reasonable notice of the hearing to all interested parties as in its judgment may be necessary under the rules and regulations to be prescribed by the Commission; that the certificate will

be issued if it is found, among other things, if it is or will be required by the present or future public convenience and necessity.

A part of subdivision (h) of such Act reads as follows:

(h) When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

Section 717r of the Natural Gas Act provides for the right of review from decisions of the Commission. The procedure generally is that an application for rehearing should be filed with the Commission within thirty days after the issuance of the order, and that no proceeding to review such order shall be brought unless the rehearing had been sought.

From a reading of the Natural Gas Act and the cases cited to us, we have concluded that the question for the Commission to determine upon its hearing of the application was whether or not the gas line proposed "is or will be required by the present or future public convenience or necessity." Therefore, the requirement as to reasonable notice to all interested parties as in the judgment of the Commission was necessary, referred to parties interested in the question of need of the proposed gas line. We also have concluded that the specific route that the petitioner was to follow with its gas line, from the West Cameron Blocks 17–49 Field Area, South Louisiana, to a point of connection with petitioner's line in Montgomery County, Texas, was not a matter for the Commission to pass upon. It was not required of petitioner that it give, in its application, the metes and bounds descriptions and the field notes of the land that would be required ultimately, so each land owner could be notified of the hearing before the commission. Once a certificate of public convenience and necessity was issued to petitioner, and it was thereby clothed with the right of eminent domain, the specific route for the pipeline to take could then be selected by petitioner. It is well settled that "the discretion of the condemnor is absolute as to what land it may condemn for its purposes, and the courts will not review its discretion in this respect, except where it is made to appear the condemnor has acted in bad faith, or has acted arbitrarily, capriciously, or fraudulently, in selecting the particular land for its purpose." Luby v. City of Dallas, Tex. Civ.App., 396 S.W.2d 192; Texas Electric Service Company v. Linebery, Tex.Civ. App., 327 S.W.2d 657. The reason for such a rule is stated in Cane Belt Ry. Co. v. Hughes, 31 Tex.Civ.App. 565, 72 S.W. 1020, and, as applied to the present situation, if different courts and juries were allowed to pass upon the necessity or advisability of condemning each tract out of the many which would go to make up the gas line from South Louisiana to Montgomery County, Texas, straight courses from point to point, with consequent lessening of milage, would in many, if not in all cases, be impossible to secure. There are no allegations and no evidence that petitioner acted in bad faith, arbitrarily, capriciously or fraudulently in selecting this route for the gas line. These points of error are overruled.

██ It is next contended by defendants that there is no evidence, and no finding by the jury, that petitioner negotiated with defendants in good faith or otherwise. No objections to the court's charge were made, and no issues concerning this matter were requested by defendants.

Article 3264 Vernon's Ann.Civ.St. provides in part that the statement to be filed by the condemning authority with the county judge shall state, among other things, that "the plaintiff and the owner have been unable to agree upon the value of the land or the damages." This allegation was made in the petition filed.

Defendant Lohmann testified: That in July and August, 1965, he was approached by a man who said he represented petitioner, who tried to acquire an easement to build a pipeline across his land. They first tried to get permission to go on the land and survey, which was refused. They later tried to negotiate with him for an easement. He tried to get petitioner to follow another line on his land. He sent petitioner's representative to his lawyer, who had orders to hold them off. He was notified of the hearing before the Commissioners and attended with his lawyer. Later, they approached him and tried to negotiate with him for this easement.

It has been held that where no such issue is submitted or requested, it is presumed the trial court found that a bona fide effort has been made to settle the issues in controversy, and that the statute in that respect had been complied with. Jones v. City of Mineola, Tex.Civ.App., 203 S.W.2d 1020. Such case also makes the following statement:

In addition it has been held in a number of cases that where the owner of the land sought to be condemned makes his appearance before the special commissioners and resists the condemnation proceedings upon the merits, he thereby waives whatever lack of efforts to reach a settlement there might have been.

We have concluded this point of error is controlled by the law expressed in Dyer v. State, 388 S.W.2d 226, which, after quoting the Jones case, supra, made the following statement:

The record is silent as to the extent of participation indulged in by appellant at the hearing, [Commissioners] but the appellant filed no plea in abatement or other pleading raising the jurisdictional question of the absence of a prior bona fide effort to reach agreement with the landowner, and under these circumstances we deem the matter to have been waived, even if the testimony quoted above should be considered insufficient to establish the question as a matter of law. See Rayburn, Texas Law of Condemnation, pages 268, 269, sec. 72(2); Rule 279, T.R.C.P.

This point of error is overruled.

■ Defendants next contend the trial court erred in excluding the testimony of two of their expert witnesses. The rule in reference to this question is set forth in 2 McCormick and Ray, Texas Law of Evidence, Sec. 1401 (2nd ed. 1956) as follows:

Whether the person offered possesses the required qualification is a preliminary question to be determined by the trial judge and should not be left to the jury. In the decision of this question our courts have wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse.

The most recent opinion found by us, reaffirming this proposition of law, is the Supreme Court decision in Wilson v. Scott, (Tex.) 412 S.W.2d 299. The trial court did not abuse its discretion in excluding this testimony.

We find no merit to the remaining points of error, and they are overruled.

■ Petitioner contends in a cross-point of error that there was no evidence to support the findings by the jury of damages to the remainder of the land, other than that taken by the pipeline easement. It is argued that this point is controlled by Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837. However, in the Zirjacks case, the type of evidence complained of here was held to be insufficient to support the jury finding,

and was not held to constitute "no evidence." Petitioner has made it clear that it is not urging an "insufficiency of the evidence" point, and does not want this case remanded. This point is overruled.

Affirmed.