**CITY OF AUSTIN, Appellant,**

v.

**Maurice D. HALL, Appellee.**

**No. 11674.**

Court of Civil Appeals of Texas.

Austin.

Oct. 8, 1969.

Appellant's and Appellee's Rehearing Denied Oct. 29, 1969.

The case is on appeal from a judgment entered by the trial court in November, 1968, dismissing the petition in condemnation as to part of the land, and leaving to be determined in a separate hearing the issue of damages for the taking of the remaining portion of the tract.

The trial court made no findings of fact but impliedly found that as to that part of the land not presently devoted to highway purposes the city council's exercise of the right to condemn was excessive and arbitrary because the council sought to condemn more land than was needed for the purpose for which the proceeding was instituted.

The City of Austin has appealed and relies upon three points of error.

We reverse and render judgment of the trial court and remand the cause for further proceedings in accordance with instructions stated in this opinion.

The petition in eminent domain filed by the City on April 30, 1953, described a tract of land belonging to Maurice D. Hall consisting of 0.57 of one acre and measuring about 100 feet by 250 feet. The petition recited that the City, acting through its city council, had determined that it was necessary "to open, establish, construct, and maintain a public street, highway and freeway (commonly known as 'Interregional Highway') extending [through the City] * * * and to open, establish, construct and maintain streets intersecting therewith * * *." The determination by the City was in the form of a resolution adopted by the council the same date the petition was filed.

With specific reference to the Hall tract, the petition alleged that the city council "has determined and found that the [Hall] tract of land * * * is suitable for such purposes and that in the furtherance of the public interest it is necessary to open, establish, construct and maintain such street, highway and freeway and a street inter-

---

H. Glenn Cortez, City Atty., Austin, Sears & Burns, Robert L. Burns, Houston, for appellant.

E. Wayne Thode, Salt Lake City, Utah, Byrd, Davis, Eisenberg & Clark, Tom H. Davis, Austin, for appellee.

O'QUINN, Justice.

This lawsuit began in April, 1953, with a condemnation proceeding filed by the City of Austin to acquire about half an acre of land for "interregional Highway," traversing the city from its north limits to its south limits, and for "an intersecting street thereto."

secting therewith over and across said land."

It is undisputed that approximately the eastern half of the Hall tract has been incorporated in the highway right-of-way proper and is now occupied by Interregional Highway 35 traversing the City of Austin. The western portion of the Hall tract at the time of hearing before the trial court had not been occupied either by the highway or by an access or intersecting street.

On motion of Hall, the trial court in April, 1967, ordered "* * * that a separate trial be held on the issues of whether * * * the City had the right to condemn that portion of the tract [that] * * * has not been used for the Interregional Highway or whether the exercise of the * * * right to condemn was excessive and arbitrary." Pursuant to the order, a hearing was held in May, 1968, and the trial court entered judgment November 5, 1968, dismissing the City's petition as to the western portion of the Hall tract and ordering that as to that part of the land "the relief sought by the City of Austin is denied and it shall take nothing."

By this judgment the trial court undertook to dispose finally of the City's effort to condemn the western part of the Hall tract and to leave for determination at a later hearing the question of damages for the taking of the eastern portion occupied by Interstate Highway 35.

On appeal the City contends under three points of error:

■ (1) That Hall consented to the taking of his land and waived the right to question the City's determination of necessity by entering an appearance before the special commissioners and by withdrawing the $2,000 award made by the commissioners.

(2) That Hall failed to meet the burden of proving that the City's determination of

necessity to condemn the land was arbitrary, capricious, or fraudulent.

■ (3) That Hall abandoned his objections to the award of the special commissioners by unreasonable delay of more than eleven years in prosecuting the issue of market value of his land.

The special commissioners awarded Hall the sum of $2,000 on May 15, 1953. Hall filed objections to the award on May 18 alleging that the sum of $2,000 was not adequate compensation. Hall's objections demanded "* * * adequate compensation for his property because possession has already been taken of said property by the City of Austin without his consent and the City of Austin is *applying this property to public use* * * *. (Emphasis added.) Hall made no allegation that the action of the City in determining necessity for the taking was fraudulent, excessive, or arbitrary.

On the same day the commissioners made the award the City deposited the sum of $2,000 in the registry of the court and took possession of the Hall property. Hall filed application to withdraw the award on November 4, 1953, and stated that the application was "* * * without prejudice to and without waiving *his right to further contest the amount of the Commissioners' award,* and still insisting upon each and every right and demand which may be further secured to [Hall] by further proceedings herein * * *" (Emphasis added.)

■ The City contends that by accepting the award of the commissioners, Hall consented to the taking and thereafter could not contend that the taking was unlawful. Hall's position is that this well-established rule is inapplicable in this case because of an agreement between the parties filed at the time the award was withdrawn.

The agreement, which was not dated, but filed in November, 1953, provided:

"It is hereby agreed between the City of Austin and Maurice D. Hall that

Maurice D. Hall may withdraw the $2,-000.00 deposited in Court by the City of Austin in the above styled and numbered cause, the amount being equal to the award of the Commissioners in this cause, and it is further agreed that such withdrawal by Maurice D. Hall is without prejudice to the right of Maurice D. Hall to further proceed in the cause in the same manner as though such sum had not been withdrawn; and

It is further agreed that in the event the said Maurice D. Hall should finally recover an amount in excess of $2,000.-00, the said Maurice D. Hall hereby waives the right to all interest on the first $2,000.00 of such final recovery."

In authorizing withdrawal of the award, the court entered an order in pertinent part providing:

"* * * came on to be heard [Hall's] * * * application for withdrawal of the * * * award * * * and it appearing that such withdrawal has been agreed to by the City * * * as set forth in the 'Agreement of Withdrawal of Award and Partial Waiver of Interest' * * * and that such application should be granted without prejudice to the rights of * * * [Hall] to further proceed in this cause:

It is accordingly Ordered that the Clerk be, and she is hereby directed to pay over to * * * [Hall] the sum of $2,000, being the amount of the award on deposit, and it is FURTHER OR-DERED that such withdrawal * * * shall not operate as a waiver in any respect by * * * [Hall] of any * * * [his] rights."

Hall contends that because of the agreement of the parties and the order of the court approving withdrawal of the award, his right to challenge "* * * the alleged necessity for taking his entire tract is precisely the same as if he had not withdrawn the $2,000."

We do not agree with this contention. We conclude that Hall consented to the taking and cannot be permitted to retain his compensation and at the same time assert that the City had no right to take his tract under power of eminent domain. In our opinion, when examined in light of the related facts the agreement amounted to no more than assent of the City to withdrawal of the award without prejudice to Hall's right to contend that the award did not provide adequate compensation for loss of his land.

At the time the award was made by the commissioners in 1953, the law as declared by the courts of this State was that the condemning authority could restrain the landowner from withdrawing the award money deposited with the court, and that the landowner withdrawing a deposit waived his right to trial on his objections "* * * unless he has a distinct understanding to the contrary with the condemnor." These declarations of the law were made in Carter v. City of Houston, Tex. Civ.App., 255 S.W.2d 336, on February 5, 1953, three months before the Hall award, and in Thomas v. Housing Authority of City of Dallas, Tex.Civ.App., 258 S.W.2d 428, in an opinion handed down on May 15, 1953, the same day the commissioners made the award of $2,000 to Hall.

Some time between May 15, 1953, and November 4, 1953, when the deposit was withdrawn by Hall, the City made an agreement with Hall consenting to withdrawal of the award "* * * without prejudice to the right of *Maurice D. Hall to further proceed* * * * in the same manner *as though such sum had not been withdrawn* * * *"* (Emphasis added.)

In view of the holding in Thomas v. Housing Authority, the City in making the agreement with Hall supplied the "distinct understanding" that it would not insist in county court that by accepting the award Hall had waived his right "to proceed further" on his objections to the adequacy of the award.

It was not until December 16, 1953, after the agreement had been made and Hall had withdrawn the award, that the Supreme Court reversed the decision of the court of civil appeals in Thomas v. Housing Authority and held that the landowner could withdraw the deposit made by the condemnor in order to take possession of the land, " * * * without prejudice to * * * [the landowner's] *right to further prosecute the litigation.*" (Emphasis added.) 153 Tex. 137, 264 S.W.2d 93, 94, col. 1.

The Supreme Court held in State v. Jackson, 388 S.W.2d 924 (Tex.1965), that after an award has been made and the condemnee has withdrawn the money deposited by the condemnor, the condemnee cannot thereafter contend that the taking was unlawful. "In legal contemplation," the court said, "he has *consented to such taking* and will not be permitted to retain his compensation and at the same time assert that the condemning authority had no right to take his property under the eminent domain power." (Emphasis added.) 388 S. W.2d 924, 925, col. 2.

In that decision the Supreme Court said, "This point was settled by this Court's decision in City of San Antonio v. Grandjean, 91 Tex. 430, 41 S.W. 477, 44 S.W. 476 (1897)." In Luby v. City of Dallas, 396 S.W.2d 192, Tex.Civ.App., Dallas, writ ref. n. r. e. (1965), the court of civil appeals held that by withdrawal of the award money, the landowners " * * * must be held as a matter of law to have impliedly consented to the taking of their property. Only the question of adequate compensation remain to be determined."

The Supreme Court stated in State v. Jackson that the Dallas court of civil appeals (in Crockett v. Housing Authority of the City of Dallas, 274 S.W.2d 187 (1954), no writ), "correctly observed" that although the landowner, by reason of amendment of the statute since the Grandjean case, may now withdraw the deposit without prejudice to his right to litigate his "claim of inadequate damages * * *

the rule in * * * Grandjean * * * would otherwise appear to be good law: 'In cases in which there has been an attempt to condemn, but the *proceedings are invalid for want of a compliance with the statute* which authorized the condemnation, it is held that the owner, *by accepting the condemnation assessed, makes the transaction effectual.*" (Emphasis added.)

In the Luby case, among other defects alleged, it was contended that the city, as the condemning authority, had failed to state *"the purpose for which the land will be used,* concerning which there was a discrepancy between the Statement and the resolutions of the City Council * * *" (Emphasis added.) Yet the court held as a matter of law the landowners consented to the taking by accepting the deposit of the award.

In State v. Jackson the landowners claimed the condemnor had failed to prove facts essential to the trial court's jurisdiction, such as *"necessity of the taking"* and *"any bona fide effort to agree * * ** as to the value of the land or the amount of damages." (Emphasis added.) The Court held that no jurisdictional question was involved because the trial court gained jurisdiction with the filing of objections. The landowners had withdrawn the deposit, the Court said, leaving only the question of damages, and the landowners had the burden of proving value, citing with approval Ready v. City of Marshall, 234 S.W.2d 104, Tex.Civ.App., Fort Worth, no writ (1950).

In the case before us, Hall as the landowner accepted the deposit in 1953, after filing objections only as to value, and did not seek to challenge the right of the City to condemn his land until October 5, 1966, nearly thirteen years after accepting the award of $2,000, by filing amended objections.

Hall's position is that the rule of Jackson, Grandjean, and Luby is not applicable here because in each of those cases the withdrawal was unilateral and not accompanied by an agreement with counsel for

the condemnor assenting to the withdrawal and agreeing that the condemnee may "further proceed in the cause in the same manner as though such sum had not been withdrawn * * *" Hall also invokes the order of the court, made in approving the withdrawal agreement, "that such withdrawal * * * shall not operate as a waiver in any respect by * * * [Hall] of any of * * * [his] rights."

We have concluded that the agreement between the parties consenting to Hall's withdrawal of the $2,000, had the effect of stating only a "distinct understanding" that by accepting the award Hall did not waive his right to proceed further with his objections to value, a burden that rested upon Hall. The order of the court merely approved the agreement of the parties and again stated that Hall's rights would not be waived because he had accepted the deposit. Such an agreement made and order entered in 1953 conformed to the requirements of Carter (255 S.W.2d 336) and Thomas (258 S.W.2d 428), and did nothing more.

The record shows that because of the unavailability of the assistant city attorney who had been handling the proceeding to acquire the Hall tract in 1953, the proposal for an agreement with Hall was presented to W. T. Williams, Jr., who was the city attorney. Williams testified that Hall's attorney asked Williams to sign "some sort of an instrument that would permit Mr. Hall to draw his money down and still contest the value of the property * * *" Williams stated that he did not "want to deprive the man of his money, and at the same time we didn't want to deprive him of his right to have the court pass on whether the price that the commissioners had come up with was fair, and for that reason I felt it was appropriate to grant the waiver that was requested, so that this question of value could still be passed on."

Williams was aware of the court of civil appeals decision " * * * to the effect that if a person drew down his money, he couldn't proceed with any type of appeal of his case; that the withdrawal of the money waived any right of appeal, even as to value * * *" Williams testified that if the agreement had " * * * involved anything pertaining to the declaration of the city council of the necessity to take the property * * *," he felt he " * * * would have had to take that up with the city council. I am quite sure I would." Williams added that he had no knowledge of it if the City's right to take was being questioned at that time.

The reasoning upon which the rule of Grandjean and Jackson rests is that by accepting the award the landowner gives the consent required before private property may be applied to public use with adequate compensation. Constitution of State of Texas, Article I, section 17, Vernon's Ann.St. The rule has been applied recently in Suther v. State, 395 S.W.2d 871, Tex.Civ.App., Waco, no writ (1965); McCampbell v. Coastal States Crude Gathering Company, 401 S.W.2d 318, Tex.Civ. App., Corpus Christi, writ ref., n. r. e. (1966); County of Jim Wells v. Cook, 410 S.W.2d 325, Tex.Civ.App., San Antonio, no writ (1966); Gossett v. State, 417 S.W.2d 730, Tex.Civ.App., Eastland, writ ref., n. r. e. (1967); Southwestern Bell Telephone Company v. Brassell, 427 S.W.2d 709, Tex.Civ.App., Tyler, writ ref. n. r. e. (1968).

■ We are of the opinion that an agreement between parties which would have as its purpose keeping open the question of the condemnor's right to take the property even after acceptance of the award by the condemnee would be so repugnant to the rule that acceptance of the award is consent to the taking as to render the agreement ineffectual. It is patently inconsistent for a landowner to accept the deposit, representing the full amount of the award, and thereafter take the position in county court that the condemnor acted unlawfully in taking his land.

It is not consistent with common sense, nor is it supported by the evidence, that counsel for the City entered into an agreement to permit Hall to take the City's money and at the same time to arm Hall with a right he otherwise would not have had to dispute the right of the City to take the land. When the agreement was made, Hall had already pleaded that the City was in possession of the tract and was "applying this property to public use." Hall's objections then, and for nearly thirteen years thereafter, were directed solely to the question of value.

Under the law as declared by the courts prior to the time Hall accepted the award, and before the agreement was made permitting withdrawal of the money, counsel for the City had authority to enjoin the withdrawal or to withhold the giving of a "distinct understanding" that Hall could take down the deposit without losing his right to contest the issue of damages. Moreover, under the holding of Grandjean, which has been the rule since 1897, counsel for the City were told that if Hall withdrew the award, he could no longer claim the City had no right to take the land.

To hold now that by the agreement with Hall in 1953 the City deliberately opened up the question of the right to condemn would require an implied finding that counsel for the City through design or incompetence invited and made possible an attack upon the integrity of the city council in declaring a necessity for the taking and upon legality of the very proceeding by which the land had been acquired. This we are unwilling to do.

The intention of the parties, as gathered from the instrument itself and in the light of circumstances surrounding the making of the agreement, is shown to be simply that Hall would be allowed to accept the award but still contend that it was not enough. Hall gives emphasis to the trial court's order approving the withdrawal as if the order added something to the agreement. We think it did not, but if such was intended, we hold that the court had no au-

thority to direct that Hall would be heard to say the City had no right to condemn after he had taken its money.

In view of our holding that Hall, after accepting and retaining the award, waived the right to challenge the power of the City to condemn his land, we do not reach the City's further contention that Hall waived all jurisdictional prerequisites and consented to the taking by appearing before the special commissioners without there raising the issue of the power to condemn.

It was established in City of Houston v. Derby, 215 S.W.2d 690, Tex.Civ.App., Galveston, writ refused (1948), that to vest the county court with jurisdiction in a condemnation proceeding, the condemning authority must allege and prove failure to agree with the landowner on value of the land to be taken. (Article 3264, par. 1, Vernon's Ann.Tex.Civ.St.). But it is settled that the landowner waives whatever lack of effort to reach a settlement there might have been by making appearance before the commissioners in resistance of condemnation on the merits. Jones v. City of Mineola, 203 S.W.2d 1020, Tex.Civ. App., Texarkana, writ ref. (1947); Aronoff v. City of Dallas, 316 S.W.2d 302, Tex.Civ.App., Texarkana, writ ref. n. r. e. (1958); Dyer v. State, 388 S.W.2d 226, Tex.Civ.App., El Paso, no writ (1965); Lohmann v. Natural Gas Pipeline Company, 434 S.W.2d 879, Tex.Civ.App., Beaumont, writ ref., n. r. e. (1968).

The City relies upon these cases in its contention that Hall waived the jurisdictional requirement of power to condemn by his appearance before the commissioners resisting the proceeding on the merits. The cases cited decide the question only of "failure to agree" as a jurisdictional requirement prior to institution of condemnation proceedings.

We do not decide whether the rule of these decisions is applicable to the facts of this case where the landowner participated in the hearing before the special commis-

sioners without disputing the power of the condemning authority to take the land sought to be condemned.

We find it unnecessary to consider at length the City's point that the trial court erred in dismissing as to part of the Hall tract. We have held that Hall had no right to try any issue except damages because he consented to the taking when he accepted the award of the commissioners.

After careful examination of the evidence, however, we find nothing in the record to indicate that the city council knowingly sought to condemn more land than would be used initially in construction of the highway and streets intersecting with the freeway. There is no evidence tending to show that the western part of the Hall tract was included in the condemnation proceeding with a view to acquiring the land for use in the future beyond the needs of the project. On the contrary, information the city council had before it when condemnation of the Hall property was ordered reasonably indicated that all of the Hall tract would be required for the highway and for an access street intersecting the highway and connecting with a proposed road along the north bank of the Colorado River.

Hall conceded at the hearing that he had never been told by anyone representing the City that his entire tract would not be used for the purpose for which it was condemned. The City introduced evidence that when the river road is constructed the Hall tract will afford location of a feasible, if not the only feasible, access from the highway to the river road. There is no evidence in the record indicating that the City has abandoned the project.

■ We hold that the determination by the city council that it was necessary to take the Hall tract for the highway and intersecting streets is not shown by the record to have been arbitrary, capricious, or fraudulent.

The City has preserved for this appeal, and presents under its third point, the error of the trial court in refusing to enter judgment against Hall and refusing to dismiss the proceeding on the ground that Hall, by a long and inexcusable delay in prosecuting his claim, had abandoned his objections to the award of the commissioners.

Hall's position is that "* * * the burden of proceeding to trial in this cause was on the City." Shortly after Hall filed objections to the award counsel for the City acknowledged in a letter to the clerk of the court that copy of the objections had been received and advised that the City would "waive issuance and service of process in this cause."

Hall relies on Denton County v. Brammer, 361 S.W.2d 198 (Tex.1962), in which the Supreme Court held that the condemnee had the burden of causing citation to be served on the condemnor, but that thereafter the condemnor, "had the burden of proving all the essentials necessary to show a right of condemnation," after such service or upon accepting service, "had the burden of going forward to trial * * *"

■ The City contends that when Hall accepted the award, he consented to the taking and thereby "* * * waived his right to question compliance with any jurisdiction prerequisites and had the burden of proceeding with the case on the sole issue of market value of his property."

We agree with this contention. Hall invoked the jurisdiction of the trial court by objecting to the award of the commissioners. Article 3266, sec. 6, V.A.T.S. By accepting and retaining the award after regular proceedings before the commissioners, Hall in legal contemplation consented to the proceedings in the trial court. Hall was entitled to litigate only the issue of adequate compensation. State v. Jackson, 388 S.W.2d 924 (Tex.1965); Thomas v. Housing Authority of City of Dallas, 153 Tex. 137, 264 S.W.2d 93 (1953); McCampbell v. Coastal States Crude Gathering Company, 401 S.W.2d 318, Tex.Civ.App., Corpus Christi, writ ref. n. r. e. (1966).

The effect of Hall's action in drawing down the award was to make an election to accept the award and seek additional damages rather than contest the City's right to condemn. Crockett v. Housing Authority of City of Dallas, 274 S.W.2d 187, Tex. Civ.App., Dallas, no writ (1954). Since only the issue of adequate compensation remained to be litigated, Hall had the burden to go forward with the case. It was Hall's burden to prove the value of his property. Ready v. City of Marshall, 234 S.W.2d 104, Tex.Civ.App., Fort Worth, no writ (1950), approved in State v. Jackson, 388 S.W.2d 924, 926, col. 1.

In harmony with the view that Hall had the burden to go forward with the case is the rule that the condemnee, where the only question to be submitted is the amount of damages, has the right to open and close argument as would plaintiff in ordinary civil cases. Wagoner v. City of Arlington, 345 S.W. 2d 759, Tex.Civ.App., Fort Worth, writ ref., n. r. e. (1961); Rules of Civil Procedure, Rules 266 and 269. Also in accord is Wichita County Water Control and Improvement District v. Padgett, 389 S. W.2d 314, Tex.Civ.App., Fort Worth, writ ref. n. r. e. (1965), in which the condemnees in effect had admitted the right to condemn, and the trial was conducted so that burden of proof on the whole case was on the condemnees. " * * * and there was no issue made upon which the condemnor carried the burden." 389 S. W.2d 314, 315, col. 1.

This brings us to consideration of the question of whether the trial court abused its discretion in refusing to dismiss Hall's objections for want of satisfactory explanation of a delay, extending over nearly twelve years, in prosecuting his claim for adequate compensation.

After filing objections to the award of the commissioners on May 18, 1953, and drawing down the deposit on November 4, 1953, Hall took no action until February 1, 1955, when request for admissions was filed. The City replied on February 10, 1955. Shortly thereafter, on February 18, 1955, Hall filed a motion for discovery.

Thereafter no other action was taken in court in behalf of Hall for a period of eleven years and nearly eight months. On October 5, 1966, Hall filed amended objections to the award and for the first time raised the issue of the City's right to condemn. Thereafter, the case again became active, with both parties filing pleadings, followed by hearings in March, 1967, and May, 1968, and judgment of the court in November, 1968, from which this appeal was taken.

Counsel for Hall were accorded what appears from the record to be a full hearing and opportunity to explain and justify failure for more than eleven years to prosecute Hall's claim for damages occasioned by the condemnation.

In behalf of Hall, two excuses for delay were offered. One was withdrawal of one of the attorneys from active practice and his absence on occasions from the State. But in the main, failure to prosecute Hall's claim with diligence was attributed to negotiations for settlement being conducted with counsel for the City.

When the original objections were filed in May, 1953, Hall was represented by Ralph W. Yarborough and E. Wayne Thode. In February, 1955, when request for admissions was filed, Hall was represented by Yarborough and Thode, and also by Tom H. Davis. Sometime before Yarborough went to the United States Senate in 1957, when Senator Yarborough closed up his practice, Thode and Davis were joined by Jack C. Eisenberg. Pleadings filed later in the case showed Hall to be represented by Thode, Davis, and Eisenberg, each of whom is an attorney of record on appeal.

Thode testified that he began teaching at the University of Texas School of Law at Austin in 1955, that it was at least two years before he could "get out from many of the cases" he was involved in, and that by 1958 the Hall case was the only one he

"* * * was still involved in to any substantial extent, and Mr. Eisenberg was also involved in it."

On two occasions Thode was out of the State for school years. In 1957–58 Thode was at Harvard University and for the school year 1965–66 he was at the University of Utah. These absences are not strenuously urged as valid excuses for delay in prosecuting the case.

After filing formal objections to the commissioners' award in May, 1953, and withdrawing the deposit in November, 1953, the only steps toward prosecution of the proceedings during a thirteen-year period were a request for admissions and a motion for discovery which were filed in February, 1955. As already noted, Hall's efforts to prosecute his case were otherwise dormant until October, 1966, when by amended objections he challenged for the first time the City's right to take the land.

About six months after filing the motion for discovery, Thode talked to Doren R. Eskew, then city attorney. Subsequently, Thode and Eskew had a conference on August 15, 1955. Thode testified that at the conference Eskew agreed "in principle" that if the City owned unused small parcels of land in the vicinity of Hall's tract, a trade could be worked out on the basis that Hall would acquire land substantially the same area as that portion of the Hall tract the City would use for the turnout to the proposed river road, and that Eskew said he would recommend such a trade to the city council in settlement of the lawsuit. The exact site of the turnout had not been determined, Thode said, and without such determination it was "not possible to know just what parcels the City would have left over." This testimony was given by Thode from a written memorandum he had made of the conference with Eskew.

Thode testified that thereafter, from time to time, he would see Eskew at a bar meeting, and once or twice saw him at the annual bar picnic, and on such occasions inquired, "* * * have you got this prop-erty worked out yet so that we can deal with [the] Hall matter?" Thode said Eskew's reply was, "We still don't know what we have." Without knowing what the City had to trade, Thode testified that "we just rocked along in that way until" the next meeting, which was more formal, in 1959. Thode and Eisenberg met with Eskew "in 1959 and again talked about this problem." As a result of that meeting, Eisenberg later sent Eskew a copy of the Thode memorandum made after the conference four years earlier, in August, 1955.

It was Thode's testimony that he was aware of no change "in the agreement * * * with regard to exchange of property, and this then continued this way with just inquiries whenever we met by chance about the situation * * *" until 1966. At that time Thode learned from Dudley Fowler, an assistant city attorney, that the City would not make a trade with Hall, but intended instead to seek dismissal of Hall's objections.

Thode said that as Hall's chief attorney he delayed taking any further action in the suit, following the conference with Eskew in August of 1955, because he believed a settlement could be made on the basis of the agreement in principle he had with Eskew to trade land. Thode admitted that Eskew indicated that working out a trade would not be "* * * a speedy process and it would take some time." Thode stated that the real reason he delayed the case was that he "* * * thought that this trade of property would be the wisest thing to do."

Eisenberg testified that it was clear at the meeting with Eskew in 1959 that Eskew did not know what land the City would have available for trade and that plans for the river road, to be connected with the highway by an intersecting street or access way, had not been completed. Eskew gave no indication when plans would be completed so as to place him in position to talk about settlement. Eisenberg understood Eskew would advise Hall's

counsel when plans were completed, but Eisenberg had not heard from Eskew.

The gist of the meeting with Eskew in 1959 was stated by Eisenberg in this language:

"The conference was concerning a trade of land. It was obvious at that time that the plans had not been finalized concerning where this so-called turnout was going to be, and so we don't know whether we were talking about this land or not. And that was a part of the overall feeling about it, that maybe if the City didn't have a turnout, they wouldn't need additional land, and we could have this; but if they did need it, then there would be a trade sort of thing."

Thode met with Fowler seven years later, on September 9, 1966, and made a memorandum of the meeting. The memorandum stated that Fowler had talked to Eskew who said that the agreement with Thode did not involve any specific property, but was an agreement to trade if the City had other land in the same area it did not need. Thode stated that his own understanding was not different, except that Eskew had said several times he did not know about the surplus land because plans for the river road were still in a state of flux. The memorandum stated that Thode understood Eskew had recognized the merits of Hall's position "by his agreement in principle," and this was why Thode had been "willing to wait so long for the City to ascertain its needs, and that Fowler said the agreement was just a recognition that the compromise was better than a lawsuit."

Thode admitted at the hearing that Eskew did not represent that the City had definite tracts of land available, nor did Eskew represent that the City definitely would trade one of those tracts for Hall's land in settlement of the lawsuit. It was clear, Thode testified, that the city council would have to agree to any proposed trade. Thode stated that Eskew said if it turned out the City had some excess land, Eskew thought it would be agreeable in principle

to trade Hall one of the excess pieces for Hall's land. Thode testified that Eskew said there were some properties owned by the City that might very well become excess land.

At the close of the hearing at which testimony was offered in behalf of Hall to explain delay in prosecution of his objections to the award, the trial court overruled the City's motion to dismiss Hall's suit upon the implied finding that the extended delay had been explained sufficiently to avoid the presumption of abandonment.

 The rule is well established that the courts have inherent power to dismiss a suit for failure to prosecute it with due diligence. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85 (1957); First National Bank of Houston v. Fox, 121 Tex. 7, 39 S.W.2d 1085 (1931). When a party has the duty to proceed with prosecution of a suit with reasonable diligence, a delay of unreasonable duration that has not been sufficiently explained "will raise a conclusive presumption of abandonment and will authorize the trial court to exercise its discretion in dismissing the suit." Payne v. City of Tyler, 379 S.W.2d 373, Tex.Civ. App., Tyler, writ ref. n.r.e. (1964), 383 S. W.2d 804; Pollok v. McMullen Oil and Royalty Company, 383 S.W.2d 837, Tex. Civ.App., San Antonio, writ ref. (1964); Smith v. Brown and Root, Inc., 430 S.W. 2d 549, Tex.Civ.App., Houston (14th), no writ (1968).

The fact that the party to the suit had no intention to abandon the cause, or that his attorneys had hopes of settling the case, cannot be grounds for charging the court with abuse of discretion in dismissing for want of diligence in prosecution of the case. Bevil v. Johnson, supra; Pollok v. McMullen Oil and Royalty Company, supra; Petroleum Refining Company v. McGlothlin, 429 S.W.2d 676, Tex.Civ.App., Eastland, writ ref. n.r.e. (1968).

Thode testified that as chief counsel for Hall he left active practice of law to teach

in 1955, some two years after filing objections to the award, and two or three years later the Hall case was the only case he still retained. For one period of nine months Thode was at Harvard University and seven years later was in Utah for nine months. No explanation appears in the record to show why Davis and Eisenberg did not go forward with the Hall case if Thode's absences from the State would prevent him from bringing the case to trial.

After filing a motion for discovery in 1955, which was to be the last effort in court in Hall's behalf for more than eleven years, Thode had a meeting six months later with Eskew. The next conference was four years later, in 1959, and the third conference came seven years after that, in 1966. Between conferences there were only chance encounters at bar gatherings and annual picnics. Thode's explanation for continued delay was in effect that he continued to hope the City would find it had an excess tract of land in the vicinity of the Hall tract which Eskew would recommend be traded to Hall, and that the city council would approve a trade when submitted by Eskew.

In Denton County v. Brammer, supra, the Supreme Court held that a delay of seven years after filing objections to have citation issued and delay of five years after withdrawal of the award before obtaining a setting of the case raised a conclusive presumption that the landowner had abandoned his objections. The Supreme Court (383 S.W.2d 804) expressly approved the holding of the court of civil appeals in Payne v. City of Tyler, supra, that a delay of two years and eleven months after filing objections before having citation issued resulted in abandonment of objections. A delay of seven years after filing objections without issuance or service of citation was held to be abandonment of objections to the award in Moss v. State, 361 S.W.2d 408, Tex.Civ.App., Eastland, no writ (1962). In Petroleum Refining Company v. McGlothlin, supra, dismis-

sal for want of prosecution was held proper upon delay of five years in filing suit and delay of four years without further action, although at the time of dismissal the party bringing the suit manifested an intention to prosecute the cause to judgment. Delay of more than four years and four months in requesting a hearing on a controverting affidavit resulted in abandonment under the holding in Farr v. Jefferson Amusement Company, 396 S.W.2d 434, Tex.Civ.App., Texarkana, writ dsm'd (1965). Dismissal of a suit brought more than three years before it was dismissed for want of reasonable diligence in prosecuting the cause was approved in Chapa v. Wirth, 343 S.W.2d 936, Tex.Civ.App., Eastland, no writ (1961). In Pollok v. McMullen Oil and Royalty Company, supra, a suit pending eight years was dismissed for failure to prosecute with reasonable diligence.

The rule of Bevil v. Johnson, supra, was applied recently in reversing a trial court because it refused to sustain a motion to discontinue portions of a tax suit brought in 1960 and amended each year, commencing in 1965, to include taxes accruing annually. Owens v. City of Waco, 437 S.W. 2d 660, Tex.Civ.App., Waco (1969), affirmed on this point by the Supreme Court, 442 S.W.2d 324 (1969). The court of civil appeals and the Supreme Court held that the taxpayer's "motion to discontinue the suit for taxes for the years 1956–1958 by reason of petitioner's abandonment" was improperly overruled by the trial court, citing Bevil v. Johnson.

In Bevil v. Johnson the Supreme Court stated that the court's right to dismiss a case for failure to prosecute with due diligence "rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there was a clear abuse of discretion by the trial court. That is a question of law." 307 S.W.2d 85, 87, col. 2.

In that case a motion "had remained on the docket for more than eight years

* * *" and although the Court felt there probably was "* * * justification for failure to prosecute for three years after it was filed * * *" further justification could not be found. The Supreme Court reversed the court of civil appeals and affirmed the action of the trial court in dismissing the motion. In so doing the Supreme Court said, "The fact that respondents had no intention to abandon it, or that their attorney had hopes of settling the case, cannot be made a ground for charging an abuse of discretion by the trial court." 307 S.W.2d 85, 88, col. 1.

In Denton County v. Brammer the Supreme Court stated that although mere lapse of time did not operate as an abandonment, "* * * the circumstances of this cause raised a conclusive presumption of abandonment by Brammer of his objections, and since such circumstances were wholly unexplained, *there was a clear abuse of judicial discretion on the part of the trial court* in overruling Denton County's motion to dismiss." (Emphasis added.) 361 S.W.2d 198, 201, col. 1.

In Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, it was held error not to allow moving parties an opportunity to prove that they had good reason for a long delay in prosecuting their motion for new trial. Such opportunity was accorded Hall in this case, and the trial court had before it the basic facts upon which to ground an adjudication as to whether there existed a lack of due diligence. As stated in Callahan v. Staples, "* * * whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results." 161 S.W.2d 489, 491, col. 2.

The majority of this Court are in agreement that the trial court did not abuse its discretion in refusing to hold in view of the explanations made that by delay of more than eleven years in prosecuting the issue of market value Hall abandoned his objections to the award of the special commissioners. In accordance with this decision by the majority, the cause will be remanded to the trial court for trial of the issue of damages to the entire tract as of the time of taking in 1953.

The writer does not share the view of the majority and is of the opinion that the record upon review discloses a clear abuse of discretion by the trial court, and that the cause should be remanded to the trial court with instructions to dismiss Hall's objections to the award and to enter judgment on the award as though no objections had been filed. A delay approaching twelve years in duration, explained by the fact counsel for the landowner had hopes the suit could be settled, is a delay not sufficiently explained and should result in discontinuance as a matter of law. Bevil v. Johnson.

The City suggests in its brief that "the judgment entered on November 5, 1968, may be interlocutory," but brings this appeal because "if the order of the trial court should be construed to be an order of severance, the judgment entered is final despite the error in the order." Hall "does not challenge the power of the appellate courts to decide this appeal." Agreement of the parties will not confer jurisdiction on the courts.

We take jurisdiction under the rule stated in Pierce v. Reynolds, 160 Tex. 198, 329 S.W.2d 76 (1959).

The trial court entered an order directing that "a separate trial be held on the issues of whether or not the City had the right to condemn that portion of the tract involved which has not been used for the Interregional Highway or whether the exercise of the City's right to condemn was excessive and arbitrary."

After a hearing, the trial court entered judgment that the City take nothing as to its suit to condemn the western portion of the Hall tract and dismissed the petition as to that part of the land. Under that ruling, the issue remaining to be tried would be limited to determination of value only

as to the eastern portion of the Hall tract. The trial court in an earlier hearing overruled the City's motion to dismiss Hall's objections, to which the City excepted.

We do not pass on severability of the issues in the lawsuit. The judgment of the trial court adjudicated the City's right to maintain a suit to condemn the western portion of the Hall tract, and in an earlier order denied the City's motion to dismiss Hall's objections to the award.

In Pierce v. Reynolds the Supreme Court said, "A judgment which fully adjudicates one of the severed causes is appealable even though the entire controversy as it existed prior to the severance is not determined thereby." 329 S.W.2d 76, 78–79.

Judgment of the trial court is reversed and judgment is rendered setting aside the trial court's dismissal of that portion of the City's petition in condemnation as to the western part of the Hall tract. The cause is remanded for trial on the issue of damages to the entire tract as of the time of taking in 1953.

Judgment reversed and rendered in part and cause remanded for trial on issue of damages.

Reversed and rendered in part and cause remanded for trial on damages.

O'QUINN, J., dissenting in part.

HUGHES, Justice (concurring).

I quote the following from the brief of appellant:

"An abundance of caution prompted this appeal. Appellant is of the opinion that the judgment entered on November 5, 1968 may be interlocutory, but in view of opinions of the Supreme Court 'and other courts in which the terms "separate trial" and "severance" have been treated as synonymous,' Kansas University Endowment Ass'n v. King [162 Tex. 599], 350 S.W.2d 11, 19 (Tex.Sup. 1961), Appellant perfected this appeal, preferring to have an order of dismissal from this court than a later decision that the trial court entered an erroneous order of severance and the judgment is final.

Appellee's motion was made 'pursuant to Rule 174' and requested 'a separate trial on the issues' of the right to condemn a portion of the tract and the City's exercise of the power of eminent domain being excessive and arbitrary. The trial court ordered 'that a separate trial be held on' such issues. A severance is made under authority of Rule 41, T.R.C.P., and separate trials of issues are pursuant to Rule 174, T.R.C.P. Kansas University Endowment Ass'n vs. King, supra. The language of the motion orders separate trials of issues, not severance, and the motion was made pursuant to Rule 174.

Since the judgment does not dispose of all issues in the cause, it is not final unless an order of severance was entered. Steeple Oil & Gas Corporation vs. Amend, 394 S.W.2d 789 (Tex.Sup.1965); Pan-American Petroleum Corporation vs. Texas Pacific Coal & Oil Company [159 Tex. 550] 324 S.W.2d 200 (Tex.Sup.1959); Palmer vs. D.O.K.K. Benevolent & Insurance Ass'n, 334 S.W.2d 149 (Tex.Sup.1960); Coastal States Crude Gathering Company vs. Strauch [160 Tex. 513], 410 S.W.2d 945 (Corp. Ch. Civ.App. 1967).

Iley vs. Hughes [158 Tex. 362], 311 S.W.2d 648 [85 A.L.R.2d 1] (Tex.Sup. 1958) would seem to dictate that the judgment here is interlocutory. After trial before a jury in a personal injury action in which the jury answered the liability issues, but did not answer the damage issue, the trial court granted an interlocutory judgment on the issue of liability and ordered a separate trial on the damage issues. After holding that the trial court erred in ordering a separate trial on the issues of liability and damage, the Supreme Court refused to compel the district judge to set aside the

order on the ground that Iley had an adequate remedy of appeal after the trial on the damage issues.

Under the foregoing authorities, it appears that the order is interlocutory. In view of opinions using the terms 'separate trial' and 'severance' interchangeably, however the decisions in Schieffer vs. Patterson, 433 S.W.2d 418 (Tex.Sup. 1968) and Pierce vs. Reynolds [160 Tex. 198], 429 [329] S.W.2d 76 (Tex.Sup. 1959) indicate only one safe course for Appellant. Schieffer and Pierce hold that a judgment entered pursuant to an erroneous order of severance is final and appealable. The cause of action here is not subject to severance because it involves only one cause of action, but if the order of the trial court should be construed to be an order of severance, the judgment entered is final despite the error in the order.

To avoid risk, Appellant has presented this brief."

I quote Appellee's reply to the foregoing:

"Appellee does not challenge the power of the appellate courts to decide this appeal. Appellee points out to this Court that a condemnation case is quite different from other types of cases. Although not squarely in point because a different issue was involved, in the case of City of Houston vs. Culmore [154 Tex. 376], 278 S.W.2d 825 (Tex.Sup.1955), the Supreme Court held that the amount of consequential damages suffered as a result of condemnation could be tried separately from the issue of ownership, and the same was true with regard to the appeal of the ownership issue. The Court stated:

'While it is not desirable to try cases piecemeal, it is not possible to preserve the certain rights of the City to condemn and also the equally certain rights of respondents to consequential damages in any other way than by such trial.' 278 S.W.2d at p. 829.

In Iley vs. Hughes, 311 S.W.2d 648 (Tex.Sup.1958), cited in appellant's Brief, p. 59, the Supreme Court specifically recognized that certain issues not involving personal injury could be tried separately. In Wright v. Wright [154 Tex. 138], 274 S.W.2d 670 (Tex.Sup. 1955), the Supreme Court upheld the separate trial and appeal of one issue in a will case. Appellee believes that the rationale of the above cases supports the appeal in this case."

I do not wish to add to the comments made by me in Schieffer v. Patterson, Tex.Civ.App., 440 S.W.2d 124, 1.c. 127, no writ.

I concur in the opinion of the Court.

## ON MOTION FOR REHEARING

HUGHES, Justice (concurring).

I entertain some doubt that the Court has correctly construed the agreement of the parties and the order of the Court respecting the withdrawal of the Commissioner's award. I concur in the disposition of this matter on the additional ground that if the agreement and order is construed as appellee contends then it would be violative of sound public policy. The law being that withdrawal of the award constitutes consent to the taking, any agreement to the contrary would be illegal and unenforceable. Bearing in mind that public money is involved, an agreement that the owner could withdraw the award and still contend that the taking was unlawful might result in the City having neither the land nor the money and be left with an unsecured and possibly an uncollectible claim. This, in my judgment, would render such an agreement violative of public policy.

I concur in overruling both motions for rehearing.